439 A.2d 799

**Carl ROYSTER, Raymond Helton, Nathaniel Kelly and Ernest Jackson, Jr., Appellants,**

v.

**McGOWEN FORD, INC., Penn Lee Fleet System, Inc. and Ford Motor Company.**

Superior Court of Pennsylvania.

Argued Jan. 19, 1981.

Filed Jan. 8, 1982.

162

Allen L. Feingold, Philadelphia, for appellants.

John F. Ledwith, Philadelphia, for McGowen, appellee.

William C. Foster, Philadelphia, for Penn Lee, appellee.

James J. Donohue, Philadelphia, for Ford, appellee.

Before HESTER, POPOVICH and DiSALLE, JJ.

HESTER, Judge:

This is an appeal from an Order of the Court of Common Pleas of Philadelphia County, dated June 24, 1980, entering a Judgment of Non Pros against appellants for their failure to comply with an Order of court, dated August 27, 1979, requiring appellants to answer Interrogatories.

This action arose from a single-vehicle accident which occurred on April 21, 1976. The four appellants filed their complaint on March 21, 1978 alleging a products liability action against appellee Ford Motor Company. Appellants were occupying a 1976 Ford vehicle which went off the road and hit a tree as a result of an alleged "mechanical defect in the car". Appellants had leased the vehicle from appellee Penn Lee Fleet Systems, Inc., which had purchased the vehicle from appellee McGowen Ford, Inc.

On April 10, 1978, Ford served an initial set of Interrogatories upon appellants. These Interrogatories requested a detailed list of all injuries sustained in the accident in question, as well as a list of all witnesses, both factual and expert, that appellants had expected to testify on their behalf. Interrogatories 42 through 48 specifically requested information regarding appellants' expert witnesses. Appellants answered Interrogatories 42 through 48 by stating "plaintiffs have absolutely no idea who they will call as expert or medical witnesses at this time."[1]

On April 30, 1979, Ford served a set of 10 expert Interrogatories upon appellants, which essentially sought the same information, as previously requested in Ford's initial set of Interrogatories (No. 42 through 48), concerning the identity, and substance of any opinions, of non-medical expert witnesses whom the appellants expected to testify at trial. On July 6, 1979, Ford filed a Motion to Compel Answers to the Expert Interrogatories. The lower court granted the motion of August 27, 1979, requiring full and complete answers within 45 days of the order. On March 31, 1980, Ford advised the appellants that it intended to file a Motion for Judgment of Non Pros unless the discovery was furnished within 15 days. The Motion for Entry of Non Pros was filed on April 15, 1980 and was granted by the lower court on

1. Apparently appellants did not answer all of the Interrogatories until December 20, 1978. Initially, on June 5, 1978, appellants objected to the Interrogatories. Ford subsequently filed a Motion to Strike Appellants' Objections on September 15, 1978. On September 21, 1978 the lower court ordered appellants to file full and complete answers within 30 days.

June 24, 1980. On August 19, 1980, appellants filed a Motion for Reconsideration which was denied by the lower court on September 9, 1980.

Prior to the entry of the Judgment of Non Pros, McGowen and Penn Lee, on February 20, 1980, also served Interrogatories on the appellants specifically limited to disclosure of expert witnesses. Appellants filed objections to these expert Interrogatories on or about March 18, 1980, as follows:

"Plaintiff objects to Interrogatories 1 to 3 inclusive for the following reasons: Plaintiff has already supplied this information to defense counsel in prior answers to Interrogatories as well as an extensive deposition. These Interrogatories are redundant, oppressive and harassing in nature; and are also burdensome in that they could have been directed in one set to all plaintiffs instead of in four separate sets further showing the defendant's attempt to harass plaintiffs herein."

On or about March 21, 1980, McGowen filed a Motion for Sanctions, including Judgment of Non Pros. On or about March 24, 1980, the appellants filed an answer to McGowen's Motion for Sanctions, which stated, *inter alia*:

"Plaintiffs had previously answered other Interrogatories from both defendants herein as well as from additional defendant and plaintiffs have also submitted themselves to an extensive deposition during which all of this information [relating to expert witnesses] was asked and plaintiffs answered same. *Plaintiffs have no expert witnesses. What else does defense counsel want us to say?"* (emphasis supplied).

The issue before us on appeal is whether the lower court abused its discretion in granting Ford's Motion for Judgment of Non Pros on the basis of the appellants' failure to answer the expert Interrogatories which were served on April 30, 1979, and failure to comply with the lower court's order of August 27, 1979.

For the reasons that follow, we reverse the lower court's order and remand for further proceedings.

Initially, we note that the record before us manifests a total aberration of the intent and spirit of the Pennsylvania Rules of Civil Procedure. See Pennsylvania Rules of Civil Procedure 126–128. 42 Pa.C.S.A.[2]

Again, we note that the record before us nourishes the public's perception that the entire legal system disguises, and often overlooks, the substantive interests of the parties with the veil of procedure.

Secondly, we note that the record before us emphatically demonstrates the need to clarify the Pennsylvania Rules of Civil Procedure relating to discovery, Rule 4001 et seq., 42 Pa.C.S.A., especially Rule 4003.5, relating to the discovery of expert testimony, which states, *inter alia*:

Rule 4003.5 Discovery of Expert Testimony. Trial Preparation Material

(a) Discovery of facts known and opinions held by an expert, otherwise discoverable under the provisions of Rule 4003.1 and acquired or developed in anticipation of litigation or for trial, may be obtained as follows:

(1) A party may through interrogatories require

(a) any other party to identify each person whom the other party expects to call as an expert witness at trial and to state the subject matter on which the expert is expected to testify and

**2.** In addition to the aforementioned procedural war games, counsel for the respective parties have "testified" in their briefs regarding other alleged procedural improprieties and unethical conduct. None of these other allegations are properly before us for disposition, but should be referred to the disciplinary board, if necessary. We do specifically note that, on January 11, 1980, the lower court entered an Order as follows:

"The motion of plaintiffs to enter judgment against defendants McGowan Ford, Inc., Penn Lee Fleet Systems, Inc. and Ford Motor Company is denied without prejudice to the rights of plaintiffs to file more specific Interrogatories. Answers to plaintiffs' Interrogatories, which may be forthcoming pursuant to this Order, shall be made in a responsive, unequivocal and unevasive manner. Any documents supplied in answer to said Interrogatories shall be wholly legible regardless of defendants' contentions that illegible portions thereof are not relevant."

(b) the other party to have each expert so identified by him state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion. The party answering the interrogatories may file as his answer a report of the expert or have the interrogatories answered by his expert. The answer or separate report shall be signed by the expert.

(2) Upon cause shown, the court may order further discovery by other means, subject to such restrictions as to scope and such provisions concerning fees and expenses as the court may deem appropriate.

■ The intent of Rule 4003.5 is to attempt to accommodate the competing needs and interests of the parties during the discovery process. Through interrogatories, a party may compel the identification of each person whom the other party expects to call as an expert witness at trial, as well as the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion. As in the present case, a defendant would need this information concerning the identification and opinions of expert witnesses in order to evaluate the relative strengths and weaknesses of the defense, to fully explore the possibility of settlement and to otherwise prepare for trial. On the other hand, the plaintiff, especially during the early discovery stages, may not have sufficient information to enable his expert to analyze and formulate a comprehensive opinion with respect to the relevant facts and issues involved. For instance, in a products liability action, a plaintiff is normally in need of detailed records concerning the particular product at issue. These detailed records are normally within the exclusive control and possession of the defendant-manufacturer and must be secured by the plaintiff through the discovery process.[3] Logically speaking, a plaintiff cannot secure the services of an expert for the purposes of render-

3. It is unclear as to what extent the defendants in the instant case have adequately supplied to the appellants any requested information concerning the automobile at issue. The lower court should consider this point on remand.

ing an opinion until the plaintiff has secured sufficient information on the basis of which the expert may opine.

■ The instant case was filed on March 21, 1978. On April 10, 1978 Ford served 54 Interrogatories upon appellants, including Interrogatories 42 through 48, relating to the identification and content of expert testimony. Under these circumstances, Ford's expert Interrogatories would appear to be premature. However, the information requested by Ford was properly discoverable. The question is one of timing.

Pennsylvania Rule of Civil Procedure 4007.3 states:

"Unless the court upon motion, for the convenience of parties and witnesses and in the interest of justice, orders otherwise, methods of discovery may be used in any sequence and the fact that a party is conducting discovery, whether by deposition or otherwise, shall not operate to delay any other party's discovery."

Therefore, although Ford's initial expert Interrogatories were possibly premature, appellants were still required to answer these Interrogatories, unless they obtained a protective order postponing any response pursuant to Pennsylvania Rules of Civil Procedure 4007.3 and 4012, 42 Pa.C.S.A.

The explanatory note to Rule 4003.5 states:

"If a party, in his answer to interrogatories, states that he has not yet retained his experts, he is under a duty to supplement his answer as provided by Rule 4007.4(1). In addition, the inquirer may obtain a stipulation that the party will supplement his response or ask the court for an order under Rule 4007.4(3) requiring the party to file a supplemental response when such experts are retained." [4]

4. Pennsylvania Rule of Civil Procedure 4007.4 states "(1) a party is under a duty seasonably to supplement his response with respect to any question directly addressed to the identity and location of persons having knowledge of discoverable matters and the identity of each person expected to be called as an expert witness at trial, the subject matter on which he is expected to testify and the substance of his testimony as provided in Rule 4003.5(a)(1)."

■ Therefore, appellants could have answered Ford's initial Interrogatories 42 through 48 by stating "plaintiffs have not yet retained an expert. Plaintiffs hereby stipulate, pursuant to Pennsylvania Rule of Civil Procedure 4007.4(1), that they will seasonably supplement this response with the identity of each person expected to be called as an expert witness at trial, the subject matter on which he is expected to testify and the substance of his testimony as required by Rule 4003.5(a)(1)."

■ Under these circumstances, if a plaintiff, in good faith, states that he has not yet obtained the services of an expert who is expected to testify at trial, the defendants would be protected from prejudice to their position because the plaintiff is still under an affirmative duty seasonably to supplement this response. If a defendant could subsequently show that a plaintiff has not fulfilled this affirmative duty and that the defendant has been prejudiced by plaintiff's failure, the defendant could then file a Motion for Sanctions pursuant to Pennsylvania Rules of Civil Procedure 4003.5(b) and 4019(i), which would preclude the testimony of such expert at trial.[5]

■ In order for a party to obtain a sanction as a result of another party's failure seasonably to disclose the identity of an expert witness and the substance of the expert's report, prejudice to the complaining party must be shown. In some counties of the Commonwealth, discovery relating to expert witnesses is postponed, as a matter of local practice, until the pre-trial or conciliation stage near the trial date. See generally 10 Goodrich Amram 2d Section 4003.5(a): 2 (Page 129); *Nowosielski v. Kryzosiak*, 280 Pa.Super. 243, 421 A.2d 703 (1980); *Bryant v. Southwark Realty Company*, 9 Pa.D.C. 3d 355 (1979).

5. We mention this specific sanction without precluding the possibility of other sanctions pursuant to Rule 4019. However, under the circumstances of this case, it would seem that a refusal to allow an expert witness to testify would be more appropriate than a judgment of non pros. In a products liability action, this distinction may not be significant.

■ Therefore, assuming that a party has not acted in bad faith and has not misrepresented the existence of an expert expected to be called at trial, no sanction should be imposed unless the complaining party shows that he has been prejudiced from properly preparing his case for trial as the result of a dilatory disclosure.[6] See *Lewis v. Reid*, 244 Pa.Super. 76, 366 A.2d 923 (1976), especially the dissenting opinion of Judge Spaeth, 244 Pa.Super. 87–88 at 366 A.2d 928.

In *Gill v. McGraw Electric Company*, 264 Pa.Super. 363, 382, 399 A.2d 1095, 1102 (1979), this Court enumerated the basic factors which should be considered in order to determine whether a violation of a pre-trial order, which requires the disclosure of the names and opinions of expert witnesses, constitutes grounds for the exclusion of the witness' testimony, as follows:

(1) The prejudice or surprise in fact of the party against whom the excluded witnesses would have testified, (2) the ability of that party to cure the prejudice (3) the extent to which waiver of the rule against calling unlisted witnesses would disrupt the orderly and efficient trial of the case or of other cases in the court and (4) bad faith of [sic] willfulness of failing to comply with the court's order." See *Meyers v. Pennypack Woods Home Ownership Association*, 559 F.2d 894, 904–05 (3d Cir., 1977).

"Applying these considerations to the facts of *Gill*, we held that the appellee's expert witnesses should not have been permitted to testify. Essential to our decision was the extent to which the appellee's actions had prejudiced the appellants." *Nowosielski*, supra, 280 Pa.Super. 247, 421 A.2d at 705.

"To preclude . . . testimony is a drastic sanction, and if it is not necessary under the facts of the case, an abuse of discretion may be found." *Gill, Ibid; Nowosielski, Ibid.*

In *Nowosielski*, supra, we affirmed the lower court's decision to allow defendant's expert witness to testify at trial, even though the defendant had failed to include a copy of

---

**6.** The record does not reveal whether the instant case was ever listed for trial.

the physician's medical report in his pre-trial statement, as required by a local rule of court, due to the fact ". . . that defendant's failure to include in her pre-trial statement a copy of Dr. Long's report was of minimal prejudice to plaintiffs." 280 Pa.Super. 247, 421 A.2d at 705. See also *Saks v. Jeanes Hospital*, 268 Pa.Super. 578, 408 A.2d 1153 (1979).

■ On the basis of the above, we remand to the lower court for its reconsideration of the order of June 24, 1980, in light of the factors enumerated in *Gill*, supra, to wit:

1) the extent of any prejudice or surprise of appellees resulting from appellants' failure to previously disclose the identity and opinions of an expert witness[7];

2) the ability of appellees to cure the prejudice;

3) the extent to which waiver of the rule against calling unlisted witnesses would disrupt the orderly and efficient trial of the case or of other cases in the court; and

4) appellant's bad faith or willfulness of failing to comply with the Order of August 27, 1979 [8].

The lower court's opinion does not fully address these factors.[9]

7. In response to McGowen's Motion for Sanctions, appellants represented, "Plaintiffs have no expert witnesses. What else does defense counsel want us to say." If, on remand, the lower court finds that the appellees were prejudiced by this statement, the lower court could appropriately preclude any expert testimony at trial on behalf of appellants, as a sanction pursuant to Pa.R.C.P. 4003.5(b) & 4019(i).

8. Counsel for the appellants alleges that he never received a copy of the order of August 27, 1979, as a result of a bureaucratic mistake and was never aware of the existence of the Order of August 27, 1979 until Ford filed its Motion for Judgment of Non Pros on April 15, 1980. Counsel for appellants further alleges that he thought he had, in fact, answered the expert Interrogatories at issue on numerous occasions, including appellants' objections to McGowen's expert Interrogatories, which were filed on March 18, 1980, prior to the filing of Ford's Motion for Judgment of Non Pros.

9. The lower court's Opinion states in relevant part: "more than six months having elapsed since the entry of Judge Greenberg's Order with no answer having been filed by plaintiffs to the Interrogatories, the defendant, on April 15, 1980, filed a second Motion for Sanctions

Order Reversed and Remanded to the jurisdiction of the lower court.

POPOVICH, J., concurs in the result.

Decision was rendered prior to DiSALLE, J., leaving the bench of the Superior Court of Pennsylvania.

requesting a Judgment of Non Pros. Accordingly, the court granted a Judgment of Non Pros on June 23, 1980, from which this appeal has been taken."