472 A.2d 1133

**William EMERICK and Marie Emerick, Appellants,**

v.

**Roger Martin CARSON.**

Superior Court of Pennsylvania.

Argued Sept. 7, 1983.

Filed Feb. 24, 1984.

Petition for Allowance of Appeal Denied June 12, 1984.

310

Stephen B. Harris, Warrington, for appellants.

Louise Herzel-Betz, Philadelphia, for appellee.

Before ROWLEY, POPOVICH and MONTGOMERY, JJ.

MONTGOMERY, Judge:

Plaintiff-Appellants, William Emerick and Marie Emerick, instituted this action in trespass seeking to recover damages for injuries sustained by William Emerick when he was struck by an automobile driven by the Defendant-Appellee, Roger Martin Carson. The jury which considered the evidence attributed 70% of the causal negligence to Appellant William Emerick and 30% of the causal negligence to Appellee. Because the jury found Appellant's negligence to be greater than Appellee's, a recovery was

denied and the jury did not address the issue of damages. Appellants filed this appeal from the Order of the lower court dated April 5, 1982, which denied Appellants' motion for new trial and overruled Appellants' objection to the trial transcript.

The evidence of record established that on October 4, 1978, William Emerick was a passenger in an automobile driven by William Flanagan that became disabled in a ditch when Mr. Flanagan attempted to back around a corner. The car was positioned in such a manner that its rear wheels were in the ditch and its front end was perpendicular to the road. Because it was a wet, foggy night, Appellant and Flanagan stood alongside the car to warn passing motorists of the hazard. Just before midnight, Mr. Carson was driving to work when he came around the corner and saw Mr. Emerick standing in front of the car near the center of the road. The Appellee applied his brakes in an attempt to stop but struck both Appellant and the disabled vehicle, causing severe injuries to both of Mr. Emerick's legs. Upon admission to Quakertown Hospital, the Appellant stated that he had "quite a bit to drink" about one-half hour before the accident. A blood test taken two or three hours after the accident revealed his blood alcohol level to be .185%.

■ Appellants first contend that the lower court erred in permitting an expert witness for the defense to testify when the expert's identity had not been disclosed in answers to interrogatories prior to trial. Pennsylvania Rule of Civil Procedure 4003.5(a)(1) states:

(1) A party may through interrogatories require

(a) Any other party to identify each person whom the other party expects to call as an expert witness at trial and to state the subject matter on which the expert is expected to testify and

(b) the other party to have each expert so identified by him state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion. The party answering

the interrogatories may file as his answer a report of the expert or have the interrogatories answered by his expert. The answer or separate report shall be signed by the expert.

Pennsylvania Rule of Civil Procedure 4003.5(b) states:

(b) If the identity of an expert witness is not disclosed in compliance with subdivision (a)(1) of this rule, he shall not be permitted to testify on behalf of the defaulting party at the trial of the action. However, if the failure to disclose the identity of the witness is the result of extenuating circumstances beyond the control of the defaulting party, the court may grant a continuance or other appropriate relief.

In the instant case, it is undisputed that the identity of an expert witness for the defense, Dr. Melvin Monroe, was not provided to Appellants until January 23, 1981, the day that jury selection for the trial had been completed. However, unusual circumstances surrounding this late disclosure, which are set forth in the lower court's opinion, are quite significant. It appears that Appellee's original expert witness became unavailable the week before trial, whereupon defense counsel arranged for Dr. Monroe to give testimony, which was substantially similar to that contained in the original expert's report. After the jury was selected, defense counsel supplied Appellants with Dr. Monroe's name and later that day gave Appellants' counsel a copy of Dr. Monroe's report. In addition, the lower court noted that Appellants' counsel had the opportunity to take Dr. Monroe's deposition over the weekend before Appellants' evidence was introduced on Monday and also had copies of both experts' reports before Appellants offered evidence. Due to these extenuating circumstances, the lower court allowed Dr. Monroe to testify. We conclude that the lower court correctly refused to apply the drastic sanction of preclusion of Dr. Monroe's testimony.

In *Royster v. McGowen Ford, Inc.*, 294 Pa.Super. 160, 169, 439 A.2d 799, 804 (1982), our Court considered whether the sanction of preclusion of expert testimony should be

granted on the basis that interrogatories concerning such a witness were not timely answered. In *Royster*, our Court ruled that: "... assuming that a party has not acted in bad faith and has not misrepresented the existence of an expert expected to be called at trial, no sanction should be imposed unless the complaining party shows that he has been prejudiced from properly preparing his case for trial as the result of a dilatory disclosure. 294 Pa.Super. at 169, 439 A.2d at 804. We find that Appellants have not demonstrated any prejudice as a result of Appellee's untimely disclosure of Dr. Monroe's identity. Therefore, we find that the lower court acted properly in allowing Dr. Monroe to testify on behalf of the Appellee.

Appellants next argue that the lower court erred in admitting evidence of Mr. Emerick's consumption of alcohol on the night of the accident, prior to the time when he was struck by Appellee's vehicle. After receiving a lengthy offer of proof by Appellee's counsel on this matter, the lower court concluded that evidence of Mr. Emerick's drinking could be offered by the Appellee.

It is well-settled that when recklessness or carelessness is at issue, proof of intoxication is relevant, but the mere fact of consuming alcohol is not admissible, being unfairly prejudicial, unless it reasonably establishes intoxication. See *Cusatis v. Reichert*, 267 Pa.Super. 247, 406 A.2d 787 (1979) and cases cited therein. In the instant case, the evidence was more than sufficient to reasonably establish Mr. Emerick's intoxication at the time of the accident. A blood alcohol test performed on him two to three hours after the accident revealed a blood alcohol level of .185%. At trial, Dr. Melvin Monroe, testifying as an expert witness for the defense, expressed his opinion, within a reasonable degree of medical certainty, that Appellant's blood alcohol level was approximately .220% at the time of the accident. Dr. Monroe further testified that the effect of a .20% blood alcohol level is euphoria, loss of restraint, loss of motor coordination and impairment of rational decision-making ability. Further, proof of Appellant's probable intoxication

was offered in testimony showing that just before being struck by Appellee's vehicle, Appellant narrowly avoided being struck by another car, yet remained in the middle of the dark roadway, obviously in an extremely hazardous position. We agree with the lower court's conclusion that it was reasonable to infer that Appellant's behavior immediately before the accident was not that which would be expected of a reasonably prudent and sober person under the circumstances. The aforesaid evidence, combined with Appellant's admission that he had "quite a bit to drink" one-half hour before the accident, and the Appellee's testimony that he smelled a strong odor of alcohol on Mr. Emerick's breath, adequately demonstrated the Appellant's intoxication at the time of the accident. Therefore, we cannot conclude that the lower court erred in admitting evidence of the Appellant's consumption of alcohol on the night of the accident. *Cusatis v. Reichert, supra.*

 Appellants further contend that the blood test results upon which Dr. Monroe based much of his testimony should have been declared inadmissible for a number of reasons. We find none of these to be meritorious. The blood itself was drawn at Quakertown Community Hospital but the testing was conducted at Allentown Sacred Heart Hospital Center, where many of Quakertown's lab studies were routinely sent. The test results were incorporated into Quakertown's regular medical records and were authenticated at trial by Quakertown's medical records custodian. The procedure followed for the admission of this evidence was proper, and we reject the Appellants' arguments to the contrary.[1]

 Appellants also claim that Dr. Monroe's testimony was so seriously flawed as to render it prejudicial to Appellants. This argument obviously goes to the weight to be

1. We note that in *Commonwealth v. Seville*, 266 Pa.Super. 587, 405 A.2d 1262 (1979), our Court recognized that blood alcohol tests are undeniably accurate and that their results should be viewed as medical facts.

accorded to Dr. Monroe's testimony by the jury and not to its admissibility, and is clearly devoid of arguable merit.

We next address the Appellants' contention that the lower court erred by refusing to charge the jury as follows:

"The conduct of defendant was so beyond the normal standard of due care as to constitute reckless disregard to the safety of others, wanton negligence, wanton misconduct or gross negligence where if there was any negligence on the part of plaintiff as determined by the jury, this would not reduce or bar his recovery whatsoever."

In its Opinion, the lower court stated that it refused this charge because the evidence simply did not warrant such an instruction and also because of the effect of the Comparative Negligence Act, 42 Pa.C.S. § 7102. The lower court reasoned that the law regarding recklessness, wanton negligence, wanton misconduct and gross negligence has been superseded by the comparative negligence statute. In support of this conclusion the lower court relied on *Rutter v. Northeastern Beaver School District*, 496 Pa. 590, 437 A.2d 1198 (1981), in which the Pennsylvania Supreme Court purportedly abolished the doctrine of assumption of risk, partly because of the effect of the Comparative Negligence Act. However, as the Dissent noted in *Rutter*, because only three of the seven members of the Court would abrogate assumption of the risk, this doctrine remains the law of this Commonwealth. See *Mt. Lebanon v. County Board of Elections*, 470 Pa. 317, 368 A.2d 648 (1977).

 It therefore appears that the law in our Commonwealth remains unsettled. However, it is apparent that it would be improper for us to address the question of the effect of the Comparative Negligence Act upon the doctrines of recklessness, or wanton or gross negligence in the instant case, because it is obvious that the lower court was correct in finding that the evidence in this case did not warrant the instructions requested by the Appellants. It is well-established that a trial court should not instruct the jury on law that is not applicable to the facts of the case.

*Auerbach v. Philadelphia Transportation Company,* 421 Pa. 594, 221 A.2d 163 (1966).[2] We deem it noteworthy that the trial judge in the instant case gave the jury extensive instructions concerning negligence and comparative negligence. Included in the charge were instructions relating to reckless driving. The lower court's charge more than adequately defined the concepts of negligence relevant to the evidence adduced in the case. Therefore, we hold that the lower court did not err in refusing to give the requested instructions nor in refusing to grant a new trial to the Appellants on that basis.

Appellants further claim that the lower court erred by failing to instruct the jury on the "discovered peril" doctrine. This doctrine was defined in *Lehman v. McCleary,* 229 Pa.Super. 508, 512, 329 A.2d 862, 864 (1974) as follows: "A plaintiff may recover notwithstanding his own negligence if the defendant failed to exercise due care to avoid inflicting the injury after he knew or should have known that the plaintiff was in a position of peril." In this case there was no evidence to indicate that Appellee knew or should have known that Mr. Emerick was in a position of peril. Appellant himself was the only person who knew or should have known that he was in a perilous position. Therefore, the "discovered peril" doctrine was inapplicable to the facts of the instant case and the lower court correctly refused to give the jury such an instruction. *Auerbach v. Philadelphia Transportation Company, supra.*

■ Lastly, Appellants argue that the lower court erred in certifying the trial transcript when the transcript was not prepared by the court reporter who took notes of testimony at trial. The reporter who recorded the trial testimony, Edward Moore, died before the notes had been completely transcribed. The lower court then ordered the Chief Court Stenographer, Raymond Acuff, to transcribe the remaining notes.

**2.** The decision of the lower court may be affirmed on appeal where it is correct on any legal ground or theory. *Commonwealth v. Whitehouse,* 222 Pa.Super. 127, 292 A.2d 469 (1972), and cases cited therein.

Pennsylvania Rule of Judicial Administration 5000.12 provides:

(a) The reporter who takes the notes or monitors the recording of a proceeding shall certify in proper form the accuracy of the transcription.

(b) If a shorthand reporter leaves the jurisdiction of the court, dies, or becomes incapacitated before transcribing any notes, then or later ordered, the president judge of the district shall designate another shorthand reporter to transcribe such notes and certify the transcript. The latter reporter may indicate any reservations or qualifications in the certification.

This Rule, by Order of the Pennsylvania Supreme Court, dated April 28, 1981, was to govern in "... all proceedings thereafter commenced and, insofar as just and practicable, in matters then pending."

In this case, after the lower court directed the Chief Court Stenographer to complete the notes of testimony and certify the transcript, it held a hearing on the Appellants' objections to the trial transcript. At that hearing, held on March 26, 1982, the Chief Stenographer testified that he was satisfied that the trial transcript was accurate and that he could certify the entire transcript. Appellant's counsel was given the opportunity to question the Chief Stenographer as to the transcript, and only questioned one street name which appeared on two pages of the transcript. The insignificant error in the street name was then corrected. Moreover, the trial judge declared at the hearing that he had taken copious notes at trial and, in comparing them with the trial transcript, was satisfied that an accurate record had been prepared. Finally, we note that the Appellants, in raising this issue, fail to point out any aspect of the transcript which may allegedly be inaccurate. In these circumstances, we must conclude that Rule 5000.12(b) was correctly applied by the lower court. Therefore, it is obvious the lower court did not err in certifying the trial transcript and in refusing to grant a new trial on this ground.

Affirmed.