## Electroplating Technologies Ltd. v. HH Sumco Inc.

C.P. of Lehigh County, no. 2005-C-1979.

*Gene M. Linkmeyer,* for plaintiff.
*Thomas B. Fiddler,* for defendant.

JOHNSON, *J.,* September 24, 2009—Before the court for consideration is the defendant, Sumco Inc.'s, motion for post-trial relief filed on May 18, 2009 and the plain-

tiff's motion for post-trial relief filed on May 28, 2009. The court heard argument on these motions on September 3, 2009.

As discussed more fully below, the defendant's motion is granted and the plaintiff's motion is denied.

## I. RELEVANT FACTUAL BACKGROUND

This matter involves the plaintiff, Electroplating Technologies Inc.'s (ETL), claims against the defendant, HH Sumco Inc., for (1) misappropriation of trade secrets; and (2) breach of contract. ETL offered three theories under which the jury could have found a breach of contract: (1) breach of contract by unauthorized use of trade secrets; (2) breach of contract for Sumco's exclusion of ETL from the 2000 test trials; and (3) breach of contract due to Sumco's failure to complete all three trials contemplated by the May 2000 agreement.

After a two-week trial, the jury returned a verdict finding Sumco liable for breach of contract and awarding ETL $250,000. The jury found Sumco was not liable on ETL's misappropriation claim. The court entered a molded verdict on May 12, 2009.

## II. LEGAL STANDARD

### A. *Judgment N.O.V.*

A judgment n.o.v. should be entered when "the movant is entitled to judgment as a matter of law and/or the evidence was such that no two reasonable minds could disagree that the outcome should have been rendered in favor of movant." *Schindler v. Sofamor Inc.,* 774 A.2d 765, 771 (Pa. Super. 2001) (affirming entry of judgment

n.o.v.) (quoting *Davis v. Berwind Corp.,* 547 Pa. 260, 266, 690 A.2d 186, 189 (1997)). With the first basis for entering judgment n.o.v., "a court reviews the record and concludes that even with all factual inferences decided adverse to the movant the law nonetheless requires a verdict in his favor." *Id.* With the second, "the court reviews the evidentiary record and concludes that the evidence was such that a verdict for the movant was beyond peradventure." *Id.* Both standards require a court to perform the same function—to test the sufficiency of the evidence. *Reading Radio Inc. v. Fink,* 833 A.2d 199, 210 (Pa. Super. 2003).

## B. *Molding the Verdict*

A court may not mold a verdict where the verdict already expresses the intent of the jury. *Maize v. Atlantic Refining Co.,* 352 Pa. 51, 41 A.2d 850 (1945). A court will mold a jury verdict only where there is error and a manifest clear intent on the part of the jury. *Krock v. Chroust,* 330 Pa. Super. 108, 478 A.2d 1376 (1984). For example, the court may mold a verdict where the jury's intention is apparent and undisputed, but informally stated in writing. *Gaspero v. Gentile,* 160 Pa. Super. 276, 50 A.2d 754 (1947).

## C. *New Trial*

A judge considering a post-trial motion can order a new trial pursuant to Pa.R.C.P. 227.1(a)(1) "if he concludes that the factual or legal mistake was made at the trial level and that on consideration of the particular circumstances of the case, the mistake (or mistakes) formed a sufficient basis to order a new trial." *Riccio v. American Republic Insurance Co.,* 550 Pa. 254, 262, 705

A.2d 422, 425 (1997). When a trial court is deciding whether to grant a new trial, there are two levels of review. *Morrison v. Commonwealth of Pennsylvania,* 538 Pa. 122, 133, 646 A.2d 565, 571 (1994); *Graver v. Klein,* 74 D.&C.4th 547, 549 (2000). First, the court must decide whether a "mistake" was made at trial. *Id.* Secondly, the court decides whether the mistake forms a sufficient basis for granting a new trial. *Id.* If the trial court answers the first question in a negative, it should answer the second question in the negative as well. *Morrison,* 538 Pa. at 133 n.7, 646 A.2d at 571 n.7.

## III. DISCUSSION

### A. *Sumco's Motion for Post-Trial Relief: Judgment N.O.V.*

Sumco asserts that it is entitled to judgment n.o.v. in this matter because, as a matter of law, Sumco is not liable to ETL for breach of contract. Additionally, Sumco asserts that the finding of liability and the award of $250,000 are wholly unsupported by the evidence presented at trial. ETL counters that there was ample evidence to support the jury's verdict.

### a. Breach of Contract for Unauthorized Use of Trade Secrets

In further support of its argument that it is entitled to judgment n.o.v., Sumco argues that, because the jury found that Sumco was not liable on ETL's misappropriation of trade secrets claim, as a matter of law it could not have found Sumco to be liable on the first claimed breach, *i.e.,* the alleged unauthorized use of trade secrets, otherwise the jury's verdict would be inconsistent. Im-

portantly, ETL's claim for breach of contract by unauthorized use of trade secrets is identical in all material aspects to the misappropriation of trade secrets claim. See first amended complaint, ¶¶44-47.

Under Pennsylvania law, there is a presumption of consistency with respect to the jury's findings. See *e.g., McDermott v. Biddle,* 544 Pa. 21, 25, 674 A.2d 665, 667 (1996). "[W]here there is a question of whether jury findings are consistent or inconsistent, consistency will be presumed unless there is no reasonable theory to support the jury's verdict." *Beyrand v. Kelly,* 434 Pa. 326, 329, 253 A.2d 269, 270 (1969).

Based on the fact that the jury found that Sumco was not liable for misappropriation of trade secrets, and on the case law that advises a presumption of consistency in jury verdicts, it is clear to the court that the jury did not find Sumco liable for breach of contract based on this first alleged breach: the alleged unauthorized use of trade secrets.

### b. Breach of Contract for Exclusion of ETL From 2000 Test Trials

Sumco argues three bases for its position that there can be no breach of contract for Sumco's exclusion of ETL from its December 2000 test trials. First, Sumco argues that, as a matter of law, the claim is barred by the four-year statute of limitations, as this claim was commenced in July 2005, more than four-and-one-half years after the alleged breach. Second, Sumco claims that ETL waived this alleged breach, as the uncontradicted evidence at trial established that ETL knew before the December 2000 trials that its principal, James Forand, would not be permitted on the Sumco plant floor, yet

notwithstanding that knowledge, ETL proceeded with the trials. Finally, Sumco asserts that, even if the court is not persuaded by the statute of limitations and waiver arguments, ETL failed to present evidence of damages in support of this breach of contract claim based on any theory of recovery.

### i. *Statute of limitations*

Under Pennsylvania law, claims for breach of contractual obligations must be brought within four years of the breach. 42 Pa. C.S. §5525; see *Wachovia Bank N.A. v. Rosen,* 2004 WL 1593644, *1 (Pa. Com. Pl. 2004).

Based on the testimony presented at trial, ETL knew in December 2000 that Sumco would not permit Forand to be on the plant floor for the December 2000 trials. Forand himself stated that he complained about his being excluded at that time:

"Q: When you were at the facility in December 2000, did you have conversations with Sumco personnel?

"A: Yes.

"Q: Who?

"A: Tom Horn. Tom Horn and Jeff Perkins.

"Q: Did you have discussions about the pilot program?

"A: Yes. I protested not being able to go in." Forand N. T., 04/28/09, pp. 152-53.

ETL did not commence this action until July 2005, over four-and-one-half years after the alleged breach. Consequently, the court finds that ETL's claim that Sumco breached contractual obligations under the in-

terim license agreement by excluding Forand from those trials violated the statute of limitations and was untimely filed.

## ii. *Waiver*

Parties to a contract may waive or modify the provisions of a contract either expressly or implicitly. *Trustees of First Presbyterian Church of Pittsburgh v. Oliver-Tyrone Corp.,* 248 Pa. Super. 470, 476, 375 A.2d 193, 196 (1977); *PennDOT v. IA Construction Co.,* 138 Pa. Commw. 587, 596, 588 A.2d 1327, 1331 (1991); *Black Top Paving Co. v. PennDOT,* 77 Pa. Commw. 612, 616-17, 466 A.2d 774, 776-77 (1983). A waiver is evidenced by the parties' words, writings, conduct, or all three. See *id.* The uncontradicted evidence at trial, including the excerpt from Forand's testimony above, established that ETL knew before the December 2000 trials that Forand would not be permitted on the plant floor. Notwithstanding that knowledge, ETL decided to proceed with the trials. Therefore, it appears to the court, based on Forand's own testimony, that ETL waived any alleged breach.

## iii. *Failure to prove damages*

A plaintiff bears the burden of proving its claimed damages to a reasonable certainty. Contract damages "may not be awarded when the evidence leaves the trier of fact without any guideposts except his or her own speculation. The party seeking damages must introduce specific evidence to permit a reasonably certain estimate of the amount lost due to the breach." *Merion Spring Co. v. Muelles Hnos. Garcia Torres, S.A.,* 315 Pa. Super. 469, 486, 462 A.2d 686, 695 (1983); *Commonwealth Trust*

*Co. v. Hachmeister Lind Co.,* 320 Pa. 233, 181 A. 787 (1935) (cited in Subcommittee Note to Pennsylvania Suggested Standard Jury Instruction 15.26—Damages Generally).

Damages are speculative if the uncertainty concerns the fact of damages, not the amount of damages. *Pashak v. Barish,* 303 Pa. Super. 559, 562, 450 A.2d 67, 69 (1982) (holding that plaintiff was not entitled to recovery because the right to such recovery was entirely speculative); see also, *Cohen v. Pelagatti,* 364 Pa. Super. 573, 576, 528 A.2d 657, 658 (1987); *Penn State University/PMA Insurance Group v. W.C.A.B. (Hensal),* 911 A.2d 225, 232-33 (Pa. Commw. 2006).

ETL's only damages evidence pertained to its trade secret misappropriation claim. ETL's expert, David Sugg, testified that he performed a reasonable royalty rate analysis to determine the value of ETL's intellectual property allegedly used by Sumco. See generally, Sugg N.T., 05/01/2009. But neither Sugg nor any other witness testified that ETL sustained any damages as a result of the failure to allow Forand to witness the December 2000 trials or the failure of Sumco to complete the trials. Therefore, in reviewing the record, it is clear to the court that there is no evidentiary support for the $250,000 award against Sumco on ETL's breach of contract claim related to Sumco's refusal to allow Forand on the floor for the December 2000 test trials.

c. Breach of Contract for Failure To Complete Trials

As explained more fully in section ii(3) above, ETL failed to present evidence of any damages other than those allegedly attributable to the use of trade secrets.

Therefore, with great reluctance, the court finds that the jury committed an error of law when it found Sumco liable on ETL's breach of contract claim. First, a finding that Sumco is liable under the theory of breach of contract for misuse of trade secrets is inconsistent with a finding that Sumco is not liable on the misappropriation of trade secrets claim. Second, notwithstanding the statute of limitations and waiver arguments, ETL failed to meet its burden of proving any damages for the alleged breach of contract based on either the exclusion of Forand from the December 2000 test trials or on Sumco's failure to complete trials. Therefore, ETL did not meet its burden of proving the damages necessary to establish a prima facie breach of contract claim and the jury's award of $250,000 is unsupported by any evidence adduced at trial.

For all of these reasons, the defendant, Sumco Inc.'s, motion for post-trial relief is hereby granted and the jury's verdict finding Sumco liable for breach of contract is overturned and judgment on this issue is hereby entered in favor of the defendant, Sumco Inc., and against the plaintiff, Electroplating Technologies Inc.

### B. *Plaintiff's Motion for Post-Trial Relief*

ETL has two bases for its motion. First, ETL argues that it is entitled to a new trial as a matter of law because the court erred by permitting the testimony of Sumco's experts, Mr. Altmayer and Mr. Urbanchuk at trial. Second, ETL argues that the jury's damage award of $250,000 must be modified to reflect the time frame over which the alleged breach of contract occurred, *i.e.,* from 2001 to the present. Therefore, argues ETL, the appropri-

ate award should be $2,250,000, reflecting damages for nine years of breach. The court is not persuaded by ETL's arguments.

a. New Trial: Permitting Sumco's Experts To Testify

For discussion of this issue, it is necessary to review the relevant procedural history of this case, much of which is recited from the documents provided as exhibits to the parties' briefs in support of, or in opposition to, this motion.

On July 31, 2007, this court issued a case management and trial attachment order which, among other things, set the discovery deadline for March 1, 2008. Sumco noticed a corporate designee deposition of ETL, but ETL failed to appear for this deposition. After repeated attempts to reschedule that deposition, Sumco filed a motion to compel ETL's deposition.

On February 28, 2008, ETL moved to extend the discovery deadlines and, by order dated March 14, 2008, this court granted ETL's request and entered revised case management deadlines, requiring discovery to be completed on or before July 1, 2008. The March 14, 2008 order also provided that ETL's expert reports were to be submitted by August 1, 2008 and Sumco's expert reports were to be submitted by September 1, 2008.

On March 19, 2008, Sumco responded to ETL's second set of interrogatories and in response to ETL's expert interrogatory, Sumco stated that "Sumco has not yet determined if any experts will be utilized at trial." See Sumco's objections and responses to ETL's second set of interrogatories, dated March 19, 2008.

In or about late May or early June 2008, ETL retained new counsel, which entered its appearance in this case on June 3, 2008. On July 28, 2008, ETL again moved this court to extend the case management deadlines. Sumco opposed this request, and this court denied ETL's motion.

In late July 2008, ETL requested Sumco agree to an extension for ETL to submit its expert report. Sumco agreed, conditioned only upon ETL granting Sumco a similar courtesy if needed, as in all prior case management orders, Sumco's deadlines to submit expert reports was 30 days after ETL's deadline to do so. ETL promised to produce its final report on or before August 29, 2008.

On August 29, 2008, ETL produced an incomplete expert report to Sumco. According to ETL's counsel, ETL's expert, David J. Sugg, still needed to finalize portions of his report. ETL provided Sumco with the final portion of Mr. Sugg's report, which provided Sugg's damages analysis, on September 18, 2008, nearly three weeks after the agreed upon deadline.

On September 26, 2008, Sumco requested a two-week extension to submit its expert report. ETL agreed to that request. On October 13, 2008, Sumco produced the report of its liability expert, Frank Altmayer. This expert report was submitted to ETL within the time frame agreed upon by the parties and nearly six-and-a-half months before the April 28, 2009 trial.

Because ETL served its damages report three weeks after ETL submitted its liability report, Sumco's rebuttal

damages report was due three weeks after the date that Sumco submitted its rebuttal liability report, *i.e.,* on or before November 3, 2008. On October 29, 2008, Sumco's counsel requested an additional four days to submit its rebuttal damages report, *i.e.,* until November 7, 2008. ETL's counsel agreed to this deadline. Sumco submitted its rebuttal report of its damages expert, Gregory Urbanchuk, to ETL on November 7, 2008, approximately five-and-a-half months before the April 28, 2009 trial.

On October 16, 2008, ETL moved to preclude Sumco's liability expert, Frank Altmayer from testifying at trial, contending that his name was disclosed in an untimely manner. On November 13, 2008, ETL filed an identical motion to preclude Sumco's damages expert, Greg Urbanchuk from testifying. At oral argument on ETL's motion in limine to exclude Urbanchuk's testimony, ETL failed to articulate any prejudice that it sustained as a result of Sumco's supposedly untimely disclosure of its damages expert witness. This court denied both motions.

ETL now seeks a new trial, alleging this court erred in not precluding Sumco's expert witnesses from testifying. However, it appears to the court that, based upon the above procedural facts and the documents in support thereof, ETL's argument that Sumco's experts should have been precluded arises out of Sumco's agreement to give ETL additional time to produce its expert report. Having requested Sumco's consent to an extension of time to produce its own expert report conditioned only on Sumco getting a reciprocal extension, a condition to which ETL agreed, and because ETL was not prejudiced by the court allowing Sumco's experts to testify, ETL's

arguments appear to be without merit, as explained more fully below.

i. Pennsylvania Rule of Civil Procedure 4003.5(a)(3)

First, it appears to the court that Sumco did not have any obligation to disclose the names of its expert witnesses until it knew that they would be testifying experts. Pennsylvania Rule of Civil Procedure 4003.5(a)(3) provides:

"A party may not discover facts known or opinions held by an expert who has been retained or specifically employed by another party in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial . . . ." Pa.R.C.P. 4003.5(a)(3).

The purpose of Rule 4003.4(a)(3) is to encourage parties to freely and openly consult with experts by minimizing the likelihood that the information provided to the expert and the opinions that the expert forms may be used against the party or parties who obtained or employed the expert. *Goldblum v. Insurance Company of North America,* 11 D.&C.3d 354, 356 (1979). In the absence of exceptional circumstances, a party cannot be compelled to disclose in answers to interrogatories facts known or opinions held by non-witness experts whom it may have consulted. See generally, *Philadelphia Electric Co. v. Nuclear Energy Liability-Property Insurance Association,* 10 D.&C.3d 340 (1979) (providing that, in the absence of exceptional circumstances, a party cannot be compelled to disclose, in answer to interrogatories, the facts known or opinions held by non-witness experts whom it may have consulted).

### ii. Supplementation of interrogatories

Second, Sumco supplemented its responses to inter-rogatories when it produced its report of its liability expert, Frank Altmayer, on October 13, 2008 and the report of its damages expert, Greg Urbanchuk, on No-vember 7, 2008. According to Sumco's representations to this court, it did not determine whether it would use Altmayer and/or Urbanchuk as testifying experts or consulting experts until it received their reports and learned what their opinions would be.

"Logically speaking, a [party] cannot secure the serv-ices of an expert for the purposes of rendering an opinion until the [party] has secured sufficient information on the basis of which the expert may opine." *Royster v. McGowen Ford Inc.,* 294 Pa. Super. 160, 166-67, 439 A.2d 799, 803 (1982).

### iii. Requested sanctions re: expert reports

Pennsylvania appellate courts consider the exclusion of expert testimony as a "drastic sanction." See *e.g., Royster v. McGowen Ford Inc.,* 294 Pa. Super. 160, 169, 439 A.2d 799, 804 (1982) (quoting *Gill v. McGraw Electric Co.,* 264 Pa. Super. 368, 382, 399 A.2d 1095, 1102 (1979)). Only in extreme circumstances will courts impose sanctions upon a party who is found to have prejudiced another party by its failure to provide its ex-pert report or otherwise identify its expert. See *e.g., Freeman v. Maple Point Inc.,* 393 Pa. Super. 427, 436, 574 A.2d 684, 689 (1990).

In order to obtain a sanction as a result of another party's "failure seasonably to disclose the identity of an

expert witness and the substance of the expert's report, prejudice to the complaining party must be shown." *Royster v. McGowen Ford Inc.,* 294 Pa. Super. 160, 168, 439 A.2d 799, 804 (1982). When a party has not acted in bad faith and has not misrepresented the existence of an expert expected to be called at trial, "no sanction should be imposed unless the complaining party shows that he has been prejudiced from properly preparing his case for trial as a result of a dilatory disclosure." *Id.* at 169-70, 439 A.2d at 804 (1982). (footnote omitted)

As the above facts demonstrate, Sumco provided its expert reports to ETL approximately six months before trial. At oral argument on ETL's motion in limine to exclude Urbanchuk, ETL's counsel was unable to articulate any reason that ETL was prejudiced by Sumco's allegedly late disclosure. See oral argument on motions in limine, N.T., 04/27/09, pp. 56-57.

In the brief in support of its post-trial motion, ETL for the first time states a prejudice argument; namely, ETL claims that it sustained prejudice because it "played by the rules" and Sumco did not. See plaintiff's brief in support of post-trial relief, p. 19. ETL asserts that "Sumco's violation of the rule allowed them to prejudice ETL by turning [ETL's] compliance with the rule into the theory of [Sumco's] own defense." See plaintiff's brief in support of motion for post-trial relief, p. 21.

Specifically, ETL argues that "Sumco's defense was based upon the disparity in the number of trade secrets claimed in the pleadings and the number claimed at trial." *Id.* at p. 20. ETL argues that, because it chose to identify

Sugg as its expert witness in response to Sumco's interrogatories, it was "forced it to stake its ground, during discovery, as to who would be its testifying expert." *Id.* at pp. 18-19. Sugg, however, after evaluating the information, concluded and testified that only five out of 13 of ETL's previously claimed and pled trade secrets met the standard to constitute actual trade secrets. *Id.* at p. 19. Based on this disparity, states ETL, Sumco argued that Forand was unbelievable and unknowledgeable in the electroplating field, an argument that prejudiced ETL. *Id.* at p. 20.

First, upon review of the record in the matter, this disparity argument was just one facet of Sumco's defense. Second, the court notes that, even if Sumco had identified its experts at the close of discovery, it still could have argued that the trade secrets claimed at trial differed from those in the plaintiff's pleadings. Finally, and most importantly, however, it appears to the court that, even if ETL had been prejudiced by its choice to disclose Sugg's name early, that does not equate to prejudice from Sumco's failure to disclose the names of its experts earlier than it was required to do. As a matter of law, ETL could not have sustained prejudice from Sumco doing what it was legally entitled to do.

Sumco's arguments against the preclusion of their experts' testimony appeared reasonable at the time the court denied ETL's motions in limine to exclude the testimony of Mr. Altmayer and Mr. Urbanchuk and still appear so now. Additionally, the court was not, and is not, persuaded that ETL sustained any prejudice because Sumco did not disclose the names of its experts by the

close of fact discovery. Therefore, for all of the foregoing reasons, ETL's motion for a new trial is denied.

## b. Molded Verdict

As stated above, the jury in this matter awarded ETL $250,000 in damages for Sumco's alleged breach of contract. ETL argues, "the damage amount awarded by the jury is the amount due 'annually' under the license agreement entered into pursuant to the May 1, 2000 contract between ETL and Sumco." Memorandum of law in support of plaintiff's motion for post-trial relief at p. 13.

The only evidence ETL provided regarding damages was as to the misappropriation of trade secrets claim, for which the jury found no liability. Therefore, as a preliminary matter and harkening back to Sumco's motion, it appears that the verdict award is not based on any evidence, as, again, there was no damages evidence provided as to the breach of contract claim.

However, even if there were damages evidence presented on the breach of contract claim, the court may mold the verdict only in "extremely exceptional cases" and only "to make the corrected verdict conform to the obvious intention of the jury, *i.e.,* to conform to a verdict actually rendered, but informally or improperly stated in writing." *Commonwealth v. Dzvonick,* 450 Pa. 98, 104 n.4, 297 A.2d 912, 914 n.4 (1972). The verdict slip in the case clearly and unequivocally stated that the jury's intent was to award ETL $250,000 on its breach of contract claim. The jury did not make any notation or comment to evidence that they intended their award to be on a yearly basis.

The court will not take the drastic step of molding this jury's verdict to reflect an intention that they in no way reflected, and for which there is no basis. Therefore, ETL's motion to mold the verdict is denied.

## IV. CONCLUSION

For the foregoing reasons, the defendant, HH Sumco Inc.'s, motion for post-trial relief is granted and the jury's verdict finding liability on behalf of Sumco Inc. on the breach of contract claim of Electroplating Technologies Inc. is hereby overturned and judgment is entered in favor of the defendant, Sumco Inc., and against the plaintiff, Electroplating Technologies Inc., on the breach of contract claim. The plaintiff's motion for post-trial relief is denied.

## ORDER

And now, September 24, 2009, upon consideration of the defendant, HH Sumco Inc.'s, motion for post-trial relief filed on May 18, 2009 and the plaintiff's response thereto and the plaintiff's motion for post-trial relief filed on May 28, 2009 and the defendant's response thereto and after argument on both motions;

It is hereby ordered, for the reasons set forth in the accompanying memorandum opinion, that the defendant's motion is granted and the jury's verdict finding the defendant, HH Sumco Inc., liable on the breach of contract claim is hereby overturned and judgment is entered in favor of the defendant, HH Sumco Inc., and against the plaintiff, Electroplating Technologies Ltd., on the plaintiff's breach of contract claim; and it is further ordered, for the reasons set forth in the accompanying

memorandum opinion, that the plaintiff's motion is denied.