627 A.2d 801

Scott A. LOCKE, Appellant,

v.

Jerry L. CLAYPOOL, Appellee.

Superior Court of Pennsylvania.

Argued May 12, 1993.

Filed July 8, 1993.

530

J. Bradley Kearns, Pittsburgh, for appellant.

Leo M. Stepanian, Butler, for appellee.

Before McEWEN, OLSZEWSKI and FORD ELLIOTT, JJ.

OLSZEWSKI, Judge:

Appellant Scott Locke brought this action against Jerry Claypool after sustaining injuries in an accident that occurred outside of Butler. Locke was riding a bicycle on the highway in the early morning hours when Claypool, who was driving an automobile, struck him from behind. We are asked to determine whether the trial court erred in admitting evidence of Locke's intoxication at the time of the accident. After a careful review of the parties' briefs and the record below, we reverse and remand for a new trial.

Locke, fifteen-years old at the time, spent the day of July 18, 1986, visiting his brother. Later that evening, he and his brother had an argument. Locke left his brother's house by

bicycle to visit his sister, Becky, who lived on the other side of Butler. Becky was not home, however, and Locke decided to stay overnight with another sister, Carolyn, who lived approximately fifteen miles away on Route 422. Locke rode his bike in the middle of the right-hand lane of the highway because the berm was paved in parts and rocky in others. He was wearing a blue and white shirt, blue jeans, and a tee shirt. As Locke was riding his bike on a downgrade, he saw the lights of a car reflected in wires above him, indicating that a car was approaching. He applied the brakes in an effort to safely reach the berm, but before he knew it, he was struck by a car.

Claypool testified that he was returning from a tavern in Butler where he played bass guitar in a band. He testified that the night was clear and that he was observing the speed limit. He was travelling in the right-hand lane when "out of nowhere," he saw Locke on the bike about fifteen-to-twenty feet in front of him. He testified that the bike had no reflectors and that he could not avoid striking Locke. He did not see Locke swerve or drive erratically in any way.

Edward Meier, a local police officer, investigated the scene for physical evidence. When he arrived, Locke was in an ambulance which was prepared for departure. Meier testified that as he approached Locke, he smelled the odor of beer, and on that basis ordered a blood alcohol test. Meier acknowledged, however, that he could not conclude that Locke had been drinking that evening, but ordered the test as a matter of course. R.R. at 207(a). The test indicated that Locke had a blood alcohol content of .06%.

Locke brought this action against Claypool seeking to recover damages for the injuries he sustained as a result of the accident. At trial, the Hon. Floyd A. Rauschenberger admitted the results of the blood test into evidence. Charles Winek, a professor of toxicology at Duquesne and Pittsburgh Universities, testified that since the test was taken while Locke was receiving intravenous treatment, Locke's blood alcohol content was between .075% and .08% at the time of the accident. He also testified that as a minor, Locke was more sensitive to the effects of alcohol than an adult, since alcohol is a "foreign

substance" to minors which would induce exaggerated responses to its imbibition. He thus concluded that Locke was impaired for purposes of operating a vehicle on the highway and "really represented a hazard on the highway." R.R. at 235(a).

A jury found Claypool 17.5% and Locke 82.5% causally negligent, resulting in a verdict for Claypool. Locke's post-trial motions were denied. On appeal, Locke presents one issue: Was the evidence of his blood alcohol content and expert testimony properly admitted into the trial? Locke contends that the blood alcohol test and expert testimony should have been excluded as highly prejudicial because no corroborating evidence established that he was unfit to operate his bicycle.

As with any evidence, the decision whether to admit evidence of intoxication in a civil trial is subject to an abuse of discretion standard of review. *Whyte v. Robinson,* 421 Pa.Super. 33, 617 A.2d 380 (1992). The standard for admitting such evidence, moreover, is well-established:

> [T]he well-settled law of this Commonwealth is that where recklessness or carelessness is at issue, proof of intoxication is at issue, proof of intoxication is relevant, but the mere fact of consuming alcohol is inadmissible as unfairly prejudicial, unless it reasonably establishes intoxication.

*Id.* at 39, 617 A.2d at 383 (citing *Cusatis v. Reichert,* 267 Pa.Super. 247, 406 A.2d 787 (1979). Although this rule was established for cases where reckless driving of an automobile was at issue, *see Morreale v. Prince,* 436 Pa. 51, 258 A.2d 508 (1969); *Gallagher v. Ing,* 367 Pa.Super. 346, 532 A.2d 1179 (1987), *alloc. denied,* 519 Pa. 665, 548 A.2d 255 (1988), it now extends to pedestrians as well. *Kriner . v. McDonald,* 223 Pa.Super. 531, 302 A.2d 392 (1973); *Whyte v. Robinson, supra; Ackerman v. Delmonico,* 336 Pa.Super. 569, 486 A.2d 410 (1984). Our research has revealed no caselaw that applies this standard to the operator of a bicycle. We may do so, however, because bicycles and automobiles are treated identically under the criminal law and the Motor Vehicle Code. *See*

*Commonwealth v. Brown,* 423 Pa.Super. 264, 620 A.2d 1213 (1992) (bicycle is a "vehicle" under 75 Pa.C.S.A. § 3731, which proscribes persons from driving vehicles while under the influence of alcohol which renders him incapable of safe driving).

 A review of the record reveals that the only evidence regarding Locke's intoxication was: (1) the officer's testimony that he smelled the odor of beer emanating from the ambulance which housed Locke at the scene of the accident; (2) the blood test, which indicated that Locke's blood alcohol content was at .06% (a level well below the statutory presumption [1] of unfitness to operate a vehicle); and (3) the expert, who extrapolated the test results and concluded that because Locke was a minor, he would have an exaggerated reaction to alcohol.[2] Locke contends that these factors indicate only that

---

1. 75 Pa.C.S.A. § 1547, provides, in pertinent part:
 (d) **Presumptions from amount of alcohol.**—If chemical testing of a person's breath, blood or urine shows:
 (1) That the amount of alcohol by weight in the blood of the person tested is 0.05% or less, it shall be presumed that the person tested was not under the influence of alcohol ...
 (2) That the amount of alcohol by weight in the blood of the person tested is in excess of 0.05% but less than 0.10%, this fact shall not give rise to any presumption that the person tested was or was not under the influence of alcohol, but this fact may be considered with other competent evidence in determining whether the person was or was not under the influence of alcohol ...
 (3) That the amount of alcohol by weight in the blood of the person tested is 0.10% or more, this fact may be introduced into evidence if the person is charged with violating section 3731 [relating to driving while intoxicated].
 Although the "presumptions" under this section are not applicable to civil cases, *see* discussion, *infra,* civil courts have used this statute as a yardstick in determining whether a litigant was unfit to operate a vehicle. As we note later, however, even if Locke's blood alcohol content gives rise to a presumption that he was unfit to operate a vehicle, Claypool still must present some evidence, other than Locke's blood alcohol content, to allow introduction of the blood test. Here, it is undisputed that Locke's blood alcohol level allows no presumptive inference that he was unfit to operate his bike.

2. The trial court justified the admission of the evidence by considering Locke's "lack of prudent judgment" in riding a bicycle in the dark on a major highway at 2:10 in the morning without reflectors. Whether Locke acted with prudent judgment, however, is a matter of contributory negligence—a question which the jury must decide. The factors

he consumed alcohol, and not that he was unfit to operate his bicycle. We agree.

Our Supreme Court has held that evidence of a driver's blood alcohol content alone is insufficient to prove intoxication to a degree that renders him unfit to drive. *Billow v. Farmers Trust Company*, 438 Pa. 514, 266 A.2d 92 (1970) (evidence of driver's .14% blood alcohol content alone is insufficient). In *Ackerman v. Delmonico, supra*, this Court explained the rationale behind this rule:

> The theory behind allowing a blood alcohol level to be admitted into evidence in a civil case is that it is relevant circumstantial evidence relating to intoxication. However, blood alcohol content alone may not be admitted for the purpose of proving intoxication. There must be other evidence showing the actor's conduct which suggests intoxication. Only then, and if other safeguards are present, may a blood alcohol level be admitted.

*Id.*, 336 Pa.Super. at 576, 486 A.2d at 414. Thus, in *Ackerman*, this Court held that evidence of a pedestrian's .195% blood alcohol content was admissible where there was independent testimony that he drank heavily in the late afternoon and evening before the accident, smelled strongly of alcohol at the time of the accident, slurred his speech, and had an unusually low level of alertness. *Id.* at 576–577, 486 A.2d at 414. *See also Gallagher v. Ing, supra* (evidence of intoxication admissible where evidence showed that driver had consumed scotch for a one and one-half hour period, drove his car at an excessive rate of speed, and had a blood alcohol content of .19%). Moreover, this Court has recently stated that the objective criteria normally required to establish intoxication include evidence of "staggering, stumbling, aimless wandering, glassy eyes or incoherent mumbling." *Whyte v. Robinson, supra*, 421 Pa.Super. at 41, 617 A.2d at 384 (pedestrian with blood alcohol content of .144% determined after police officer

cited by the trial court are unrelated to physical manifestations of the effects of alcohol, as opposed to those mentioned below such as slurred speech or erratic behavior.

smelled alcohol on his breath insufficient to establish intoxication absent the aforementioned factors).

Here, Locke exhibited no physical conduct which would indicate that he was unfit to operate his bicycle. There is no evidence that he was operating his bike erratically. There is no testimony regarding the amount of alcohol he consumed, that he slurred his speech, or appeared intoxicated. The only independent evidence which might indicate that Locke was intoxicated was a police officer's testimony that he smelled beer emanating from Locke's person. Without more, however, this evidence proves only that Locke consumed alcohol; it is insufficient to prove intoxication. *See, Whyte v. Robinson, supra*, at 39, 617 A.2d at 383. Moreover, in cases that have admitted blood alcohol tests, not only did independent evidence corroborate an inference that the person was intoxicated, but his or her blood alcohol level was above .10%, the statutorily presumptive level of unfitness to operate a vehicle. 75 Pa.C.S.A. § 1547(d)(3). *Ackerman v. Delmonico, supra; Gallagher v. Ing, supra.* In this case, Locke's blood alcohol content was .06% at the time of the blood alcohol test. This level is insufficient, by presumption or otherwise, to establish that he was unfit to operate his bicycle. Without any evidence of Locke's physical conduct which shows that he was unfit to operate his bicycle, his blood alcohol level only indicates that he consumed alcohol. The evidence was therefore inadmissible. *Billow v. Farmers Trust Co., supra; Morreale v. Prince, supra.*

Claypool argues that the expert testimony independently establishes that Locke was intoxicated at the time of the accident. We disagree. In *Gallagher v. Ing, supra*, this Court stated: "the 'other' evidence necessary to render admissible a blood alcohol content *in excess of .10 percent,* it has been held, may consist of expert testimony interpreting the significance of the results of blood alcohol tests with respect to unfitness to drive." 367 Pa.Super. at 353, 532 A.2d at 1183 (emphasis added). The rationale behind this rule is that when a person's blood alcohol content exceeds .10%, our legislature has determined that he is presumptively unfit to drive. 75

Pa.C.S.A. § 1547(d)(3). The "presumption" of unfitness to drive, however, is inapplicable to civil cases, and a jury may not be instructed regarding the presumption. *Suskey v. Loyal Order of Loyal Moose Lodge No. 86*, 325 Pa.Super. 94, 472 A.2d 663 (1984). Therefore, expert testimony is helpful to explain the significance of a blood alcohol content above .10%, without reference to the "presumption." *Ackerman v. Delmonico, supra* 336 Pa.Super. at 576, 486 A.2d at 414. Here, however, Locke's blood alcohol content was below any presumptive intoxication level and expert testimony, without any objective indicia that Locke was unfit to operate his bike, is entirely speculative and highly prejudicial.

■ Moreover, the expert's testimony "extrapolated" the results of the blood test in three different ways. First, he claimed that because the test was taken some time after the accident, the alcohol was leaving Locke's system at the time of the test thus resulting in a lower result. Second, he testified that because the intravenous injections into Lock's bloodstream diluted the effect of alcohol, the .06% test result did not accurately reflect Locke's blood alcohol content while he was operating his bike. Third, he claimed that Locke's probable blood test result, .075% to .08%, would create more "exaggerated" conduct on Locke's behalf, because as a minor his body is not accustomed to the "foreign substance" of alcohol. This Court has viewed this type of expert testimony, which extrapolates blood test results, with skepticism. *Schwarzbach v. Dunn*, 252 Pa.Super. 454, 461, 381 A.2d 1295, 1298 (1977).[3] We find the expert's opinion that Locke's conduct would be "exaggerated" is entirely speculative given the

3. We note that our Supreme Court has also questioned the reliability of testimony which extrapolates blood alcohol content by "relating back" test results in the criminal context. The Court has held that such testimony is insufficient to prove that a person's blood alcohol was above .10% while he was operating a vehicle for purposes of 75 Pa.C.S.A. § 3731(a)(4) (now amended). *Commonwealth v. Jarman*, 529 Pa. 92, 601 A.2d 1229 (1992); *Commonwealth v. Modaffare*, 529 Pa. 101, 601 A.2d 1233 (1992). These cases do not govern the admissibility of such expert testimony in civil cases where reckless driving is at issue. They do support our holding, however, that without any physical manifestation of the effects of alcohol, blood test results and expert testimony extrapolating those results are speculative and prejudicial.

fact that there was absolutely no testimony from the many people that saw Locke that he was unfit to operate his bicycle. This expert testimony, without more, is insufficient to establish intoxication to a point where Locke was unfit to operate his bicycle and should have been excluded.

Since there was no independent evidence corroborating Claypoole's contention that Locke was intoxicated while operating his bicycle, the possibility is too great that the jury placed undue emphasis on the mere fact that Locke consumed alcohol on the evening of the accident. It is this very possibility that our Supreme Court has admonished our trial courts to guard against. The trial court therefore abused its discretion in admitting any evidence of alcohol consumption in this case. We reverse the judgment in favor of Claypool and remand for a new trial.

Order reversed; remanded for new trial; jurisdiction relinquished.