## Mulholland v. Henkels & McCoy Inc.

*Carmen P. Belefonte,* for plaintiff Mark Mulholland.
*Martin S. Kohn,* for plaintiffs Michael and Carol Masi.
*Robert St. Goggin,* for defendants Henkels & McCoy Inc. and Michael Masi.
*Robert C. Steiger,* for defendant Mark Wesley Mulholland.

BATTLE, *J.,* April 26, 1995—Mark Mulholland filed suit against defendants, Michael Masi and Henkels & McCoy Inc. Michael Masi also filed suit against Mark Mulholland. The actions are consolidated. They are the result of injuries which Mark Mulholland sustained in an accident involving his automobile and construction equipment at Henkels & McCoy's work site. Mark Mulholland filed a motion in limine to preclude evidence of, and reference to, his consumption of alcohol and his blood alcohol level. For the reasons stated herein, we deny this motion.

The pertinent facts are as follows. At 12:50 a.m., on December 20, 1991, Mark Mulholland's automobile collided with a loader/backhoe at Henkels & McCoy's construction site on Lancaster Avenue. Mark Mulholland's vehicle was traveling eastbound on Lancaster Avenue and the loader was located in the median. At the time, the construction crew was "breaking down" the work site. Mark Mulholland's automobile was the only vehicle traveling within several hundred feet of the area. The roadway was clear, dry, and straight. He was familiar with the roadway due to local residence and frequent travel.

Following the accident, statements were obtained from Mark Mulholland and his passenger, Michael Mulholland. These statements conflict as to the amount

of alcohol consumed. All statements indicate that, prior to the collision, the Mulhollands were at the Main Lion bar on Lancaster Avenue. In a July 24, 1992 interview with his father's insurance company, Mark Mulholland stated that he had consumed "at least" three beers. However, during his May 6, 1994 deposition, he testified that he could not recall the amount he had consumed. Also, Michael Mulholland, while at the accident scene, informed police that both brothers had consumed approximately eight to 10 beers that night. However, during his December 23, 1991 interview with the insurance company, Michael stated that he had consumed eight beers and while he could not guess how many his brother had, he said that it was less.

At the accident scene, the construction crew and the first officer to respond noted a strong odor of alcohol emanating from the vehicle. Also, as Mark Mulholland was transported by helicopter to the hospital, various paramedic personnel smelled an odor of alcohol emanating from him. Thereafter, various hospital personnel, including a trauma surgeon, noted the smell of alcohol on Mark Mulholland's breath.

While at the hospital, blood was drawn from Mark Mulholland at 2:14 a.m. which revealed a blood alcohol content of 0.168 percent. Henkels & McCoy and Michael Masi, the operator of the loader, intend to introduce at trial expert testimony referencing the significance of a blood alcohol content of 0.168 percent.

In Pennsylvania, the law on the admissibility of evidence of intoxication to prove negligence in civil litigation is well-settled. Our Supreme Court, in *Fisher v. Dye,* 386 Pa. 141, 125 A.2d 472 (1956), stated that:

"[W]hile proof of intoxication is relevant where reckless or careless driving of an automobile is the matter at issue, the mere fact of drinking intoxicating liquor is not admissible, being unfairly prejudicial, unless it reasonably establishes a degree of intoxication which

proves unfitness to drive: *Critzer v. Donovan,* 289 Pa. 381, 384 (1927)." *Fisher, supra* at 148, 125 A.2d at 476. The determination of type and amount of evidence necessary to establish a degree of intoxication which proves unfitness to drive is a question of fact. The courts have expounded on the issue and an analysis of the spectrum of these decisions is pertinent to our determination.

Our Superior Court found the following combinations of evidence were sufficient to establish intoxication proving unfitness to drive.

In *Crosby v. PennDOT,* 378 Pa. Super. 72, 548 A.2d 281 (1988), plaintiff's automobile struck a tree and a utility pole. At trial, plaintiff attempted to exclude evidence of his intoxication. Defendant presented the following: testimony of police who arrived at the scene and smelled an odor of alcohol on plaintiff; plaintiff's blood alcohol content of 0.101 percent; testimony of a toxicologist who opined that this blood alcohol level rendered the individual unfit to drive; and evidence that plaintiff was familiar with the road, but drove off of it, 100 feet directly into a tree.

The trial court admitted the evidence and the Superior Court affirmed holding that "[t]aken in its totality, this evidence revealed far more than a 'mere hint of intoxication' and certainly justified the submission to the jury. . . ." *Crosby, supra* at 77-78, 548 A.2d at 284 (quoting trial court opinion at 4).

Similarly, in *McKee by McKee v. Evans,* 380 Pa. Super. 120, 551 A.2d 260 (1988), plaintiff presented defendant's deposition testimony that he consumed approximately seven or more 12-ounce glasses of beer within a three hour period immediately before the accident and plaintiff's opinion that he was probably intoxicated.

The trial court admitted the evidence and the Superior Court affirmed stating that, "[i]n our view, these state-

ments, alone, are sufficient evidence of intoxication to introduce the questioned deposition testimony." *McKee by McKee, supra* at 163, 551 A.2d at 281.

Further, in *Ackerman v. Delcomico,* 336 Pa. Super. 569, 486 A.2d 410 (1984), plaintiff, a pedestrian, was struck by defendant's automobile. Defendant presented testimony of plaintiff's girlfriend and roommate stating that plaintiff had been drinking beer since late in the afternoon; the testimony of defendant and medical personnel that plaintiff smelled strongly of beer; plaintiff's blood alcohol content of 0.195 percent; hospital records which revealed that plaintiff admitted drinking heavily; and evidence that plaintiff had slurred speech and a low level of alertness following the accident.

The trial court admitted the evidence and our Superior Court affirmed. In so doing, it stated that "[l]ooking at all the evidence, there is much more than a suggestion of intoxication and, therefore, we conclude that the evidence of appellant's intoxication was properly admitted, and was not prejudicial. . . ." *Ackerman, supra* at 575, 486 A.2d at 413.

Also, in *Emerick v. Carson,* 325 Pa. Super. 308, 472 A.2d 1133 (1984), the plaintiff, a pedestrian, was struck by defendant's automobile. At trial, defendant presented the following evidence: plaintiff's blood alcohol content of 0.185 percent; expert testimony referencing the effect that alcohol level will have on an individual; evidence that plaintiff stood and remained in the road despite nearly being hit prior to the accident; plaintiff's admission that he "had quite a bit to drink;" and defendant's testimony that he smelled a strong odor of alcohol on plaintiff's breath.

The trial court admitted the evidence and the Superior Court affirmed stating that "[t]he aforesaid evidence . . . adequately demonstrated [defendant's] intoxication at the time of the accident." *Emerick, supra* at 314, 472 A.2d at 1136.

Finally, in *Cusatis v. Reichert,* 267 Pa. Super. 247, 406 A.2d 787 (1979), the plaintiff was in an automobile accident with defendant. Plaintiff was precluded from presenting evidence of defendant's intoxication. Specifically, the trial court excluded the following: testimony of the first officer at the scene that defendant's gait was "rather poor and there was an odor of alcohol about him;" defendant's blood alcohol content of 0.14 percent; and testimony of defendant and his passenger that they consumed three-quarters of a quart of Boone's Farm wine and two bottles of beer each between 7:30 p.m. and 10:30-11:30 p.m.

In overruling the trial court, the Superior Court held that "[t]aken in its totality, this evidence reveals far more than a mere hint of intoxication condemned as prejudicial . . . [and] could reasonably support a conclusion that Reichert was intoxicated. . . ." *Cusatis, supra* at 252-53, 408 A.2d at 790.

Conversely, our courts have held that evidence of consumption of alcoholic beverages was inadmissible where it was insufficient to reasonably establish intoxication proving unfitness to drive. Specifically, our Supreme Court found the following combinations of evidence were insufficient to establish intoxication proving unfitness to drive.

In *Billow v. Farmers Trust Co.,* 438 Pa. 514, 266 A.2d 92 (1970), plaintiff's automobile struck and killed Ollie Martin. At trial, plaintiff was precluded from presenting evidence of the decedent's blood alcohol content of 0.14 percent and testimony of a Dr. McConaghie who would have opined that an individual with that alcohol level would be "affected" in his driving.

In affirming the courts below, our Supreme Court held that "Dr. McConaghie's opinion that a person with a blood alcohol content of 0.14 percent would be 'affected' in his driving falls short of the requirement that the evidence show a 'degree of intoxication which

proves unfitness to drive.' " *Billow, supra* at 517, 266 A.2d at 93.

Therefore, the Supreme Court established that evidence of blood alcohol content alone was not admissible because it was insufficient to establish intoxication proving unfitness to drive.

Similarly, in *Critzer v. Donovan,* 289 Pa. 381, 137 A. 665 (1927), plaintiff, a pedestrian, was struck by defendant's automobile. At trial, plaintiff was precluded from presenting testimony that a witness smelled alcohol on defendant's breath after the accident.

In affirming the court below, our Supreme Court held that "[s]tanding alone the odor of liquor does not prove, nor is it evidence of, intoxication; joined with other facts it may become so. . . ." *Critzer, supra* at 385.

Also, our Superior Court has found the following combinations of evidence were insufficient to establish intoxication proving unfitness to drive.

In *Locke v. Claypool,* 426 Pa. Super. 528, 627 A.2d 801 (1993), plaintiff, a bicyclist, was struck by defendant's automobile. At trial, defendant presented the following: an officer's testimony that he smelled the odor of beer on plaintiff's breath; plaintiff's blood alcohol content of 0.06 percent; and an expert toxicologist who extrapolated the blood test results and concluded that because plaintiff was a minor, he would have an exaggerated reaction to alcohol.

In overruling the trial court, the Superior Court held that "these factors indicate only that he [Locke] consumed alcohol, and not that he was unfit to operate his bicycle." *Locke, supra* at 533-34, 627 A.2d at 804. In so holding, the court placed emphasis on the fact that plaintiff's blood alcohol content was 0.06 percent, which was insufficient, by statutory presumption or otherwise, to establish that plaintiff was unfit to operate his bicycle. Also, the court discounted the expert testimony. It held that "expert testimony is helpful to

*explain* the significance of a blood alcohol content. . . ." *Id.* at 535, 627 A.2d at 805. (emphasis added) Here, however, the expert did not explicate the effects that plaintiff's alcohol level had on him. Rather, the expert opined that as a minor, plaintiff was more sensitive to the effects of alcohol.

Further, in *Whyte v. Robinson,* 421 Pa. Super. 33, 617 A.2d 380 (1992), plaintiff, a pedestrian, was struck by defendant's automobile. At trial, defendant presented the following evidence: defendant's testimony that he smelled alcohol on plaintiff's breath where all other witnesses did not; and testimony of plaintiff's doctor that, upon examination three hours later, he smelled alcohol on plaintiff's breath.

In overruling the trial court, our Superior Court held that the above-referenced evidence "is insufficient to prove a degree of intoxication indicating any reckless-ness or carelessness on Whyte's part at the time of the accident." *Whyte, supra* at 40, 617 A.2d at 383.

Finally, in *Hawthorne v. Dravo Corporation, Keystone Division,* 352 Pa. Super. 359, 508 A.2d 298 (1986), decedent drowned when his automobile plunged into a river in an area of defendant's dredging operation.

At trial, defendant was precluded from presenting evidence that decedent shared marijuana cigarettes with three other persons prior to the accident; had consumed two or three glasses of beer and had a blood alcohol level of 0.057 percent. Defendant was also precluded from presenting an expert toxicologist who would have opined that the combined effect of alcohol and marijuana reduces normal judgement with respect to time, distance, and concern for one's safety.

Our Superior Court affirmed the trial court's holding. In so doing, its findings were premised on the fact that decedent's marijuana usage was irrelevant because the effects had dissipated prior to the accident. Also, the court held that evidence of decedent's alcohol con-

sumption was irrelevant because a "blood alcohol level of 0.057 percent was unquestionably insignificant to prove intoxication." *Hawthorne, supra* at 371, 508 A.2d at 304.

Applying the standards as set forth in the above-referenced cases, we conclude that evidence of Mark Mulholland's blood alcohol level is admissible because it reasonably establishes a degree of intoxication which proves unfitness to drive.

The following evidence taken in its totality sufficiently establishes Mark Mulholland's intoxication and unfitness to drive and is thereby admissible into evidence.

First, in *Crosby, supra,* plaintiff was familiar with the road on which he traveled, but drove off it straight into a tree. Similarly, Mark Mulholland was familiar with Lancaster Avenue having lived in the area for several years and traveled over it many times, but drove off of it into Henkels & McCoy's loader.

Coupled with the above statements of witnesses and the party, which admit alcoholic consumption prior to the accident, support the establishment of intoxication proving unfitness to drive.

In *McKee, supra,* defendant admitted to consuming seven or more 12-ounce glasses of beer which the court stated alone was sufficient to establish intoxication. In *Ackerman, supra,* hospital records and witness statements indicated that plaintiff admitted and was seen drinking heavily. In *Emerick, supra,* plaintiff admitted to having "quite a bit to drink." And in *Cusatis, supra,* defendant and passenger admitted consumption of three-quarters of a quart of wine and two bottles of beer.

Similarly, Mark and Michael Mulholland made statements to the officers who responded immediately after the incident, to insurance adjusters, and later to attorneys, that they consumed alcohol prior to the accident. Although the amount they consumed lessened with each

statement, Mark Mulholland's blood alcohol level was considerable at 0.168 percent. This would indicate that the statements are sufficient to introduce the evidence of intoxication.

Also, testimony of witnesses that they noted an odor of alcohol on the party will support the establishment of intoxication.

In *Crosby, supra* and *Cusatis, supra,* the first officer who arrived at the scene smelled alcohol on the party. Similarly, the first officer who arrived at the Mulholland accident scene noted a strong odor of alcohol emanating from the Mulholland vehicle which contained Mark.

Further, in *Ackerman, supra,* medical personnel attending to defendant testified that he smelled strongly of beer. Similarly, as Mark Mulholland was transported to the hospital, various medical attendants, as well as hospital personnel, including the trauma surgeon, noted an odor of alcohol emanating from him.

Finally, in *Ackerman, supra* and *Emerick, supra,* the defendants, who had initial contact with the plaintiff, testified that they smelled a strong odor of alcohol on plaintiff. Similarly, the construction workers who first attended to Mark Mulholland at the scene noted a strong odor of alcohol emanating from him.

Also, in conjunction with the above-referenced evidence, expert testimony regarding the significance the specific blood alcohol content has on an individual and the blood alcohol content itself may support the establishment of intoxication proving unfitness to drive.

In *Locke, supra,* our Superior Court stated that "expert testimony is helpful to explain the significance of a blood alcohol content." *Locke, supra* at 535, 627 A.2d at 805. Our courts have utilized such testimony, combined with other evidence, to establish intoxication proving unfitness to drive.

In *Crosby, supra* and *Emerick, supra,* our Superior Court found a toxicologist's testimony that the blood

alcohol level rendered the individual unfit to drive was sufficient, when coupled with all other evidence, to establish intoxication.

Similarly, Henkels & McCoy and Michael Masi intend to introduce expert testimony that Mark Mulholland's blood alcohol level of 0.168 percent rendered him unfit to drive. Considered in conjunction with all other evidence, this may establish intoxication proving unfitness to drive.

In conclusion, taken in its totality, the following evidence of intoxication reasonably establishes that Mark Mulholland was unfit to drive: Mark Mulholland's familiarity with Lancaster Avenue; statements of Mark and Michael Mulholland that they had consumed alcohol prior to the incident; statements of witnesses including the police, construction crew, paramedic and hospital personnel that there was an odor of alcohol about Mark; and expert testimony which indicates that at a blood alcohol level of 0.168 percent an individual is unfit to drive an automobile. For the foregoing reasons, we deny Mark Mulholland's motion.

### ORDER

And now, to wit, April 26, 1995, it is hereby ordered and decreed that the motion in limine to preclude evidence of, and reference, to Mark Mulholland's consumption of alcohol and blood alcohol level is denied.