672 A.2d 333

**Joseph T. SUROWIEC and Jean Surowiec, Husband and Wife**

**v.**

**GENERAL MOTORS CORPORATION,
a Corporation, Appellant.**

**Joseph T. SUROWIEC and Jean Surowiec,
Husband and Wife, Appellants,**

**v.**

**GENERAL MOTORS CORPORATION, a Corporation.**

Superior Court of Pennsylvania.

Argued June 27, 1995.

Filed Feb. 27, 1996.

512

Louis C. Long, Pittsburgh, for General Motors.

Kelly M. Tocci, Aliquippa, for Surowiec.

Before DEL SOLE, BECK and TAMILIA, JJ.

TAMILIA, Judge:

On June 29, 1990, a car owned and operated by the plaintiff, Joseph T. Surowiec, accelerated inexplicably while plaintiff was attempting to park, resulting in property damage and personal injury. Surowiec and his wife, Jean Surowiec, brought suit against General Motors Corporation alleging negligence, breach of warranty and strict liability. A jury returned a verdict in favor of the plaintiffs, and defendant filed post-trial motions seeking judgment n.o.v., a new trial or remittitur.[1] The trial court denied the request for judgment n.o.v., but granted a new trial reasoning it had erred in granting plaintiffs' motion in limine to preclude expert testimony concerning Surowiec's alcohol intake prior to the accident and relation-back testimony addressing husband's alleged alcohol-related driving impairment. The parties now present cross-appeals, consolidated sua sponte, challenging the trial court's ruling.

Plaintiffs argue the trial court erred by reversing its decision regarding the motion in limine. Defendant agrees with the decision allowing testimony regarding husband's intoxication, but argues judgment n.o.v., rather than a new trial,

---

1. The question of remittitur as requested by General Motors in post-trial motions is not before us and in any event is rendered moot by our affirmance of the trial court's Order granting a new trial.

was appropriate because plaintiffs failed to establish the existence of a vehicular malfunction.

 Plaintiffs proceeded on the theory their 1990 Chevrolet Cavalier malfunctioned as husband was backing into a parking space, causing the vehicle to jump the curb and strike another vehicle before shooting forward and striking two garages. Plaintiff provided no expert testimony to show there was a defect in the automobile, but relied on a "malfunction theory" which may be established by circumstantial evidence. *See Rogers v. Johnson & Johnson Products*, 523 Pa. 176, 565 A.2d 751 (1989); *Ducko v. Chrysler Motors Corp.*, 433 Pa.Super. 47, 639 A.2d 1204 (1994). Plaintiffs argue they presented sufficient circumstantial evidence from which the jury should have concluded the vehicle malfunctioned.

Plaintiff/driver testified he had experienced no problem with the vehicle he had purchased just the day prior to the accident. Surowiec explained the vehicle accelerated inexplicably and he was unable to stop the car despite applying the brakes. He also testified he consumed between 30 and 32 ounces of beer within three and one-half hours of the accident, and medical records indicated blood drawn from plaintiff approximately one and one-half hours after the accident revealed an alcohol level of .082 per cent. A witness to the accident, Anthony Rinaldi, testified the car's engine roared loudly, sounding like a jet engine. General Motors offered expert testimony no engine, transmission or braking system defects were detected, and the automobile could not have malfunctioned as alleged. General Motors' position is that actions taken by the plaintiff himself had caused the car to perform as it did.

 Plaintiffs contend the trial court erred by granting a new trial on the basis the expert testimony regarding husband's alcohol intake should have been allowed. Defendant was prepared to produce testimony by toxicologist Charles L. Winek, Ph.D., that the amount of alcohol which plaintiff had consumed, knowledge of when plaintiff had taken his last drink, the time of the accident, and his blood level one and

one-half hours after the accident, established plaintiff had a blood alcohol level of .104 per cent at the time of the accident. Dr. Winek also would have testified the plaintiff was unfit to safely operate the vehicle at the time of the accident. The trial court granted plaintiffs' motion in limine to exclude Dr. Winek's testimony, relying on *Billow v. Farmers Trust Co.*, 438 Pa. 514, 266 A.2d 92 (1970), and *Locke v. Claypool*, 426 Pa.Super. 528, 627 A.2d 801 (1993).

This aspect of the case turns on a single, narrow issue of whether expert testimony of intoxication, corroborated by other evidence, is admissible to establish the intoxication of plaintiff to a degree that his intoxication was the cause of the accident. We believe it is.

■ The plaintiff relies on the case of *Locke, supra*, in assigning error to the trial court in granting a new trial. The rule enunciated in *Locke* is that where recklessness or carelessness is at issue, proof of intoxication is relevant, but the mere fact of consuming alcohol is inadmissible as unfairly prejudicial unless it reasonably establishes intoxication. This is a correct statement of law. The facts in *Locke* required the denial of admission of evidence of intoxication as to Locke because the evidence was insufficient to establish intoxication.

A review of the record reveals that the only evidence regarding Locke's intoxication was (1) the officer's testimony that he smelled the odor of beer emanating from the ambulance which housed Locke at the time of the accident; (2) the blood test which indicated that Locke's blood alcohol content was at .06% (a level well below the statutory presumption of the unfitness to operate a vehicle); and (3) the expert, who extrapolated the test results and concluded that because Locke was a minor, he would have an exaggerated reaction to alcohol.

*Id.* at 533, 627 A.2d at 803–04 (footnotes omitted). This Court found the above-detailed evidence standing alone was insufficient to establish intoxication. The Court pointed out that cases which admitted blood alcohol tests had *independent* corroboration, such as erratic driving and his or her blood

alcohol content was above .10 per cent, the statutory presumptive level of unfitness to operate a vehicle.

▮ While the presumption of intoxication arising from a blood alcohol level of .10 per cent alone is not evidence of intoxication in a civil action, the testimony of an expert is helpful in interpreting the significance of a blood alcohol content above .10 per cent, without reference to the "presumption." *Ackerman v. Delcomico,* 336 Pa.Super. 569, 486 A.2d 410 (1984). In *Crosby v. Dept. of Transportation,* 378 Pa.Super. 72, 548 A.2d 281 (1988), this Court stated:

> We find that the .101% level of intoxication, especially when joined with the expert's testimony that the same would impair one's motor skills, was properly admitted by the trial court for the jury's consideration in assessing what transpired on the evening in question. Especially is this so since we have evidence that the plaintiff smelled of alcohol at the time of the accident when his vehicle left the roadway and struck various objects before coming to rest.

*Id.* at 77, 548 A.2d at 283. Our Court concluded that the totality of the evidence pointed to more than a "mere hint of intoxication" and justified the submission to the jury of the evidence of husband's intoxication and blood alcohol test results.

The case before us is analogous in most respects to *Crosby.* Here, the plaintiff testified he had consumed between 30 and 32 ounces of beer within three and one-half hours of the accident. Blood tests taken one and one-half hours after the accident established a blood level of .082 per cent. Expert toxicologist evidence would have established a blood level of .104 at the time of the accident. The accident occurred in a new automobile with only 10 to 12 miles on the odometer, when the car lurched forward and backward suddenly while plaintiff was parallel parking. The vehicle sustained only sheet metal damage, was able to be driven after the accident, revealed no evidence whatsoever of a mechanical or product defect, and subsequently was driven, without mechanical repair, for 12,000 miles.

As stated above, the plaintiff relied on a malfunction theory, which in turn required the plaintiff to negate reasonable secondary causes of the accident. *Brill v. Systems Resources Inc.*, 405 Pa.Super. 603, 592 A.2d 1377 (1991). Since no evidence of mechanical failure was proven, the jury was forced to operate in a vacuum when the defendant was denied the right to establish a reasonable secondary cause of the accident: to wit, intoxication. Under these circumstances, the jury was improperly allowed to speculate the accident was caused by malfunction instead of human error which could have been explained by intoxication. While the malfunction theory relieves the plaintiff of the burden of proving the precise defect which caused the harm, *Rogers, supra,* the mere fact an accident happens does not permit a case to go to the jury on conjecture or guess work, *Woodin. v. J.C. Penney Company, Inc.*, 427 Pa.Super. 488, 629 A.2d 974 (1993); *see Roselli v. General Electric Co.*, 410 Pa.Super. 223, 599 A.2d 685 (1991) (Plaintiffs could not proceed on malfunction theory based upon spontaneous breakage of a coffee carafe where evidence of product use raised an equally probable explanation of breakage); *Lonon v. Pep Boys*, 371 Pa.Super. 291, 538 A.2d 22 (1988) (Trial court erred in charging jury on malfunction theory where evidence an external factor may have caused the battery to explode during a jump start was just as likely an explanation as plaintiff's theory of an internal defect).

Based on the foregoing analysis, we find the trial court did not err by granting a new trial and allowing expert testimony concerning husband's alcohol intake prior to the accident. We caution, however, that evidence of alcohol consumption is not per se admissible in automobile accident cases, but rather its admissibility is always subject to the test of relevance and must be balanced against any prejudice that evidence of drinking will engender. *Morreale v. Prince*, 436 Pa. 51, 258 A.2d 508 (1969). Here, the expert's opinion was that the level of appellant's alcohol consumption negatively affected "his normal sober sensory, motor and judgement functions." (Report of May 28, 1993, R.R. 44.) Since the issue was whether a malfunction caused the erratic perfor-

mance of the vehicle, evidence establishing a different cause would be relevant and therefore admissible. The admission of blood alcohol test results is a matter entrusted to the discretion of the trial court, and unless we perceive an abuse of that discretion, we will not disturb the trial court's ruling. Having found no abuse of discretion, we affirm. the Order granting General Motors' request for a new trial.

We now consider the appeal by General Motors from the denial of its motion for judgment n.o.v. and the plaintiffs' counter issue that vehicle malfunction, as evidenced by the car's erratic performance, made out a prima facie case of negligence without expert testimony establishing a malfunction defect. These matters will be discussed simultaneously.

"In reviewing a motion for judgment n.o.v., 'the evidence must be considered in the light most favorable to the verdict winner, and he must be given the benefit of every reasonable inference of fact arising therefrom, any conflict in the evidence must be resolved in his favor'." *Moure v. Raeuchle,* 529 Pa. 394, 402, 604 A.2d 1003, 1007 (1992), *quoting Broxie v. Household Finance Co.,* 472 Pa. 373, 380, 372 A.2d 741, 745 (1977). "[J]udgment notwithstanding the verdict may be entered only in a clear case, where after viewing the evidence in the light most favorable to the verdict winner, no two reasonable minds could fail to agree that the verdict was improper." *Murray v. Philadelphia Asbestos Corp.,* 433 Pa.Super. 206, 212, 640 A.2d 446, 449 (1994).

On the facts of this case it is conceivable that reasonable minds could differ as to the cause of the accident, although depending on the weight given to the evidence of intoxication on retrial, this may not be the case. The trial court, on the state of the record after trial and verdict, was unable to make a ruling in favor of judgment n.o.v. since the excluded evidence of intoxication could not enter into his decision.

Applying the standard of established law as stated above does not permit us to speculate upon how or why the jury reached its verdict. Absent proven secondary causes, the jury

had before it a case involving a new car with no apparent defects performing in an erratic and uncontrolled manner. No defects were detected in the acceleration system, nor were the brakes faulty. A jury could decide, after a charge was presented on the malfunction theory, based on the mere preponderance of the evidence, that a spontaneous one-time malfunction occurred purely on circumstantial evidence presented. The weight given to the testimony of all of the witnesses, plaintiffs' as well as defendant's, could be unbalanced in favor of the plaintiff in the absence of evidence of any secondary causes. As we stated above, under these circumstances, two reasonable minds might differ on the cause of the accident. For this reason, although judgment n.o.v. was not warranted, a new trial was justified because of the exclusion of the evidence on intoxication which could have resulted in a verdict in favor of defendant.

We hold the trial court properly weighed the evidence and recognized reversible error in its denial of the entry of intoxication evidence, but agree it would have been improper to enter judgment n.o.v. at that time. The underlying cause of the accident remains an issue for the jury to decide and it should not be denied that opportunity by this Court.

Order granting a new trial inclusive of evidence of intoxication and denying judgment n.o.v. is affirmed.