**Elder v. Blake's Body Shop**

C.P. of Delaware County, no. 92-1139.

*Francis A. Ferrara,* for plaintiff.
*J. Joseph Herring Jr.,* for defendants.

BATTLE, *J.,* April 22, 1996—

## OPINION RE: MOTION IN LIMINE TO PRECLUDE EVIDENCE OF, AND REFERENCE TO, PLAINTIFF'S ALCOHOL LEVEL AND COCAINE USE

Plaintiff filed suit against defendants, Blake's Body Shop Inc. and Russell A. Blake. The action is the result of injuries plaintiff sustained in an accident involving his automobile and defendant, Blake's Body Shop's, tow truck. Plaintiff filed a motion in limine to preclude evidence of, and reference to, his blood alcohol level and cocaine use. For the reasons stated herein, we deny this motion.

The pertinent facts are as follows. At approximately 10:30 a.m., on January 26, 1990, plaintiff drove on Interstate 95 southbound having entered from 22nd Street and Kerlin Avenue. He intended to exit at Route 322. After one-quarter of a mile, as plaintiff re-entered the right lane to exit, his car began to spin out of control. Defendant's vehicle collided with plaintiff's automobile. Thereafter, according to witnesses and defendant, plaintiff's automobile struck the guardrail. Its door, which was fastened shut with rope and extension cord, flew open and plaintiff was thrown from the car.

Following the accident, plaintiff was taken by ambulance to the Crozer-Chester Medical Center. A blood sample was taken at 11:40 a.m. which revealed a blood alcohol content of 0.336 percent and a positive cocaine reading.

Plaintiff's deposition testimony revealed the following. The evening prior to the incident he had been at Jack Denney's bar across from Crozer-Chester Hospital. He stated that he was there for eight consecutive hours, and left at 2 a.m. During that time, he consumed shots of Jack Daniels and bottles of Budweiser beer. Upon leaving, he was unable to drive home because he was intoxicated and, therefore, he slept in his car.

The next morning he awoke in his car, called his employer, advised him that he would be late, and then went back to sleep. He left the roadside at approximately 10 a.m. He stated that the weather was mixed rain and snow with the temperature at close to 32 degrees.

The police officer who investigated the accident, Edward McClellan, testified in his deposition that, from his personal observations, he did not have any indication that either drugs or alcohol had caused or contributed to the accident.

Defendant is offering an expert toxicologist's testimony which states "within a reasonable degree of medical certainty, that with a blood alcohol level of .336 percent, Steven J. Elder was totally unfit to safely operate his motor vehicle at the time of his accident . . . ."

In Pennsylvania, the law on the admissibility of evidence of intoxication to prove negligence in civil litigation is well-settled. Our Supreme Court, in *Fisher v. Dye,* 386 Pa. 141, 125 A.2d 472 (1956), stated that

"[W]hile proof of intoxication is relevant where reckless or careless driving of an automobile is the matter at issue, the mere fact of drinking intoxicating liquor is not admissible, being unfairly prejudicial, unless it reasonably establishes a degree of intoxication which proves unfitness to drive: *Critzer v. Donovan,* 289 Pa. 381, 384, 385, 137 A. 665, 666 [(1927)]." *Id.* at 148, 125 A.2d at 476. (citations omitted)

The determination of type and amount of evidence necessary to establish a degree of intoxication which proves unfitness to drive is a question of fact. The courts have expounded on the issue and an analysis of the spectrum of these decisions is pertinent to our determination.

Our Superior Court found the following combinations of evidence were sufficient to establish intoxication proving unfitness to drive.

In *McKee by McKee v. Evans,* 380 Pa. Super. 120, 551 A.2d 260 (1988), plaintiff presented defendant's deposition testimony wherein he stated that he had consumed approximately seven or more 12-ounce glasses of beer at a party within a three hour period immediately before the accident and plaintiff's opinion that, as a result, he was probably intoxicated.

The trial court admitted the evidence and the Superior Court affirmed stating that, "[i]n our view, these statements, alone, are sufficient evidence of intoxication to introduce the questioned deposition testimony." *Id.* at 163, 551 A.2d at 281.

Further, in *Ackerman v. Delcomico,* 336 Pa. Super. 569, 486 A.2d 410 (1984), plaintiff, a pedestrian, was struck by defendant's automobile at approximately 11 p.m. Defendant presented testimony that plaintiff had been drinking beer since late in the afternoon on that day; the testimony of defendant and medical personnel

that plaintiff smelled strongly of beer; plaintiff's blood alcohol content of 0.195 percent; hospital records which revealed that plaintiff admitted drinking heavily; and evidence that plaintiff had slurred speech and a low level of alertness.

The trial court admitted the evidence and our Superior Court affirmed. In so doing, it stated that "[l]ooking at all the evidence, there is much more than a suggestion of intoxication and, therefore, we conclude that the evidence of appellant's intoxication was properly admitted, and was not prejudicial . . . ." *Id.* at 575, 486 A.2d at 413. The court noted in so holding that in determining the admissibility of blood alcohol level, explanatory expert testimony is vital to the admission in that "[w]ithout explanation, the blood alcohol content has little meaning to fact-finders and quite possibly great potential for resulting prejudice . . . ." *Id.* at 577, 486 A.2d at 414.

Further, in *Emerick v. Carson,* 325 Pa. Super. 308, 472 A.2d 1133 (1984), the plaintiff, a pedestrian, was struck by defendant's automobile. At trial, defendant presented the following evidence: plaintiff's blood alcohol content of 0.185 percent; expert testimony referencing the effect that alcohol level will have on an individual; evidence that plaintiff stood and remained in the road despite nearly being hit prior to the accident; plaintiff's admission that he "had quite a bit to drink"; and defendant's testimony that he smelled a strong odor of alcohol on plaintiff's breath.

The trial court admitted the evidence and the Superior Court affirmed stating that "[t]he aforesaid evidence [specifically, blood alcohol content and expert testimony explaining the significance, in addition to plaintiff's

admissions] adequately demonstrated [defendant's] intoxication at the time of the accident." *Id.* at 314, 472 A.2d at 1136.

Finally, in *Cusatis v. Reichert*, 267 Pa. Super. 247, 406 A.2d 787 (1979), the plaintiff was in an automobile accident with defendant. Plaintiff was precluded from presenting evidence of defendant's intoxication. Specifically, the trial court excluded the following: testimony of the officer at the scene that defendant's gait was "rather poor and there was an odor of alcohol about him"; defendant's blood alcohol content of 0.14 percent; and testimony of defendant and his passenger that they consumed three-quarters of a quart of Boone's Farm wine and two bottles of beer each between 7:30 p.m. and 10:30-11:30 p.m.

In overruling the trial court, the Superior Court held that "[t]aken in its totality, this evidence reveals far more than [a] mere hint of intoxication condemned as prejudicial . . . [and] could reasonably support a conclusion that Reichert was intoxicated . . . ." *Id.* at 253, 408 A.2d at 790.

Conversely, our courts have held that evidence of consumption of alcoholic beverages was inadmissible where it was insufficient to reasonably establish intoxication proving unfitness to drive. Specifically, our Supreme Court found the following combinations of evidence were insufficient to establish intoxication proving unfitness to drive.

In *Billow v. Farmers Trust Co.*, 438 Pa. 514, 266 A.2d 92 (1970), plaintiff's automobile struck and killed Ollie Martin. At trial, plaintiff was precluded from presenting evidence of the decedent's blood alcohol content of 0.14 percent and testimony of a Dr. McConaghie who would have opined that an individual with that alcohol level would be "affected" in his driving.

In affirming the courts below, our Supreme Court held that "Dr. McConaghie's opinion that a person with a blood alcohol content of 0.14 percent would be 'affected' in his driving falls short of the requirement that the evidence show a 'degree of intoxication which proves unfitness to drive.'" *Id.* at 517.

Similarly, in *Critzer v. Donovan,* 289 Pa. 381, 137 A. 665 (1927), plaintiff, a pedestrian, was struck by defendant's automobile. At trial, plaintiff was precluded from presenting testimony that a witness smelled alcohol on defendant's breath after the accident.

In affirming the court below, our Supreme Court held that "[s]tanding alone the odor of liquor does not prove, nor is it evidence of, intoxication; joined with other facts it may become so. . . ." *Id.* at 385. (citation omitted)

Also, our Superior Court has found the following combinations of evidence were insufficient to establish intoxication proving unfitness to drive.

In *Locke v. Claypool,* 426 Pa. Super. 528, 627 A.2d 801 (1993), plaintiff, a bicyclist, was struck by defendant's automobile. At trial, defendant presented the following: an officer's testimony that he smelled the odor of beer on plaintiff's breath; plaintiff's blood alcohol content of 0.06 percent; and an expert toxicologist who extrapolated the blood test results and opined that because plaintiff was a minor, he would have an exaggerated reaction.

In overruling the trial court, the Superior Court held that "these factors indicate only that he [Locke] consumed alcohol, and not that he was unfit to operate his bicycle." *Id.* at 534, 627 A.2d at 804. In so holding, the court placed emphasis on the fact that plaintiff's blood alcohol content was 0.06 percent, which was insufficient, by statutory presumption or otherwise, to establish that plaintiff was unfit to operate his bicycle.

Also, the court discounted the expert testimony. It held that "expert testimony is helpful to *explain* the significance of a blood alcohol content . . . ." *Id.* at 536, 627 A.2d at 805. (emphasis added) Here, however, the expert did not explicate the effects that plaintiff's alcohol level had on him. Rather, the expert opined that as a minor, plaintiff was more sensitive to the effects of alcohol.

Further, with regard to expert testimony, the court reiterated that "the 'other' evidence necessary to render admissible a blood alcohol content *in excess of .10 percent,* it has been held, may consist of expert testimony interpreting the significance of the results of blood alcohol tests with respect to unfitness to drive." *Id.* at 535, 672 A.2d at 805 (quoting *Gallagher v. Ing,* 367 Pa. Super. 346, 353, 532 A.2d 1179, 1183 (1987)). (emphasis in original)

Also, in *Whyte v. Robinson,* 421 Pa. Super. 33, 617 A.2d 380 (1992), plaintiff, a pedestrian, was struck by defendant's automobile. At trial, defendant presented the following evidence: defendant's testimony that he smelled alcohol on plaintiff's breath where all other witnesses did not; and testimony of plaintiff's doctor that, upon examination three hours later, he smelled alcohol on plaintiff's breath.

In overruling the trial court, our Superior Court held that the above-referenced evidence "is insufficient to prove a degree of intoxication indicating any recklessness or carelessness on Whyte's part at the time of the accident." *Id.* at 40, 617 A.2d at 383.

Finally, in *Hawthorne v. Dravo Corp.,* 352 Pa. Super. 359, 508 A.2d 298 (1986) decedent drowned when his automobile plunged into a river in an area of defendant's dredging operation.

At trial, defendant was precluded from presenting evidence that decedent shared marijuana cigarettes with three other persons prior to the accident; had consumed two or three glasses of beer and had a blood alcohol level of 0.057 percent. Defendant was also precluded from presenting an expert toxicologist who would have opined that the combined effect of alcohol and marijuana reduces normal judgement with respect to time, distance, and concern for one's safety.

Our Superior Court affirmed the trial court's holding. In so doing, its findings were premised on the fact that decedent's marijuana usage was irrelevant because the effects had dissipated prior to the accident. Also, the court held that evidence of decedent's alcohol consumption was irrelevant because a "blood alcohol level of 0.057 percent was unquestionably [insignificant] to prove intoxication." *Id.* at 371, 508 A.2d at 304.

Applying the standards as set forth in the above-referenced cases, we conclude that evidence of Steven Elder's blood alcohol level is admissible because it reasonably could establish a degree of intoxication which proves unfitness to drive.

The following evidence taken in its totality could sufficiently establish Steven Elder's intoxication and unfitness to drive and is therefore admissible into evidence.

Statements of the party which admit alcoholic consumption prior to the accident support the establishment of intoxication proving unfitness to drive.

In *McKee, supra,* defendant admitted to consuming seven or more 12-ounce glasses of beer which the court stated alone was sufficient to establish intoxication. In *Ackerman, supra,* hospital records and witness statements indicated that plaintiff admitted and was seen drinking heavily. In *Emerick, supra,* plaintiff admitted

534

to having "quite a bit to drink." And in *Cusatis, supra,* defendant and a passenger admitted consumption of three-quarters of a quart of wine and two bottles of beer.

Similarly, Steven Elder testified in his deposition that he drank bottles of Budweiser and shots of Jack Daniels for eight consecutive hours approximately eight hours before the accident. He further testified, that at that time, he knew he was intoxicated, and could not drive. Therefore, he stayed where he was parked and slept. Immediately upon waking, he testified that he left from the spot where he had slept at and drove until the accident.

The amount of alcoholic consumption testified to by plaintiff herein, is considerably more than that testified to in *McKee, Ackerman, Cusatis,* and *Emerick, supra,* and found to be admissible therein. As in *McKee, supra,* Steven Elder's statements alone are sufficient evidence of his intoxication. However, these statements are not alone in establishing intoxication. The *Hawthorne* court held that evidence of decedent's blood alcohol level was irrelevant. In so doing, it noted that "a blood alcohol level of .057 percent [is] unquestionably [insignificant] to prove intoxication." *Hawthorne, supra* at 371, 508 A.2d at 304. Conversely, herein, plaintiff's blood alcohol level was 0.336 percent which is unquestionably significant to prove intoxication. Thereby, plaintiff's statements, which admitted he drank heavily, are coupled with the plaintiff's blood alcohol content which is exorbitant at 0.336 percent and therefore, is admissible.

Also, in conjunction with the above-referenced evidence, expert testimony regarding the significance the

specific blood alcohol content has on an individual and the blood alcohol content itself may support the establishment of intoxication proving unfitness to drive.

In *Locke,* our Superior Court stated that "expert testimony is helpful to explain the significance of a blood alcohol content . . . ." *Id.* at 536, 627 A.2d at 805. Our courts have utilized such testimony, combined with other evidence, to establish intoxication proving unfitness to drive. In fact, our Superior Court reiterated in *Locke, supra,* that the other evidence necessary to render admissible blood alcohol content in excess of .10 percent *may* consist of expert testimony interpreting the significance it has with respect to unfitness to drive.

In the defendant's reply to plaintiff's motion in limine, exhibit B, he introduced expert testimony wherein, the expert stated "[i]t is surprising that, at a blood alcohol level of 0.336 percent, he [plaintiff] was even conscious . . . . That at a blood alcohol content of 0.336 percent, Steven J. Elder was totally unfit to safely operate his motor vehicle at the time of his accident."

This evidence in conjunction with the amount of the blood alcohol content, 0.336 percent, and plaintiff's admissions of copious drinking can establish intoxication proving unfitness to drive.

Furthermore, in *Emerick, supra,* the combination of evidence found to be admissible was similar to that presented in the case at hand. Defendant therein presented, inter alia, plaintiff's blood alcohol content of 0.185 percent, significantly lower than Elder's at 0.336 percent; expert testimony referencing the significance of that level on an individual; and plaintiff's admissions that "he had quite a bit to drink." One can conclude, that the combination of evidence presented herein is similarly sufficient to admit the evidence of intoxication in the case at hand.

In conclusion, taken in its totality, the following evidence of intoxication could reasonably establish that Steven Elder was unfit to drive: plaintiff's admissions of eight hours of consecutive drinking eight hours prior to the accident; plaintiff's blood alcohol content of 0.336 percent; and expert testimony referencing that at a 0.336 percent blood alcohol level, plaintiff was unfit to operate his automobile. Therefore, the motion in limine is denied.

## ORDER

And now, to wit, April 22, 1996, it is hereby ordered and decreed that plaintiff's motion in limine to preclude evidence of, and reference to, plaintiff's alcohol level and cocaine use is denied.